660 So.2d 1118 (1995)
STATE of Florida, Appellant,
v.
Barbara GINN, Appellee.
No. 94-1427.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
Rehearing and Certification Denied October 13, 1995.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Hollywood, for appellee.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Assistant Public Defender, Fort Lauderdale, for appellee.
FARMER, Judge.
We have before us an order from the county court of Broward County certified to be of great public importance, holding the vehicle impoundment provision in section 316.193(6)(d), Florida Statutes (1993), unconstitutional. We accept jurisdiction and reverse the decision of the county court.
Defendant was charged with driving under the influence in a vehicle that she owned, to which she pleaded no contest. The court adjudicated her guilty, placed her on probation for six months, and suspended her driver's license for six months. More pertinent to this opinion, relying on section 316.193(6)(d),[1] he ordered that the vehicle *1119 she was driving at the time of the offense be impounded for a period of 10 days following the completion of her probation. She then filed a motion for resentencing, arguing that the impoundment provision is facially unconstitutional. The court granted that motion.
In a detailed order, the county judge found that the provision violates the Due Process and Equal Protection Clauses of the Florida Constitution. See Fla. Const. art. I, §§ 2 and 9. The judge concluded that the statute applies differently to those who own the vehicle in whole or in part, as well as those who rent or lease the vehicle. He reasoned that the statute invidiously discriminates against indigent vehicle owners who would be unable to afford to rent or lease a substitute vehicle during the period of the impoundment. He also found that the statute lacks "adequate, meaningful notice to an owner/lessee, and a absence of any fair opportunity to be heard to contest the removal and impoundment." He therefore deleted the portion of the sentence imposing the 10 day impoundment. The state timely invoked our discretionary jurisdiction.
We begin by noting that defendant's contention that the statute denies procedural due process for lack of notice or an opportunity to be heard is based on her observation that there is no provision requiring that a pre-impoundment written notice be sent to a vehicle owner "regarding" impoundment. In Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991), and Lamar v. Universal Supply Co. Inc., 479 So.2d 109 (Fla. 1985), the court found constitutional approval for deprivations of property under the forfeiture laws without a pre-seizure hearing, so long as the owner was promptly given notice and an opportunity for an immediate hearing after the seizure.
Of course, in that instance the state sought a permanent deprivation of property that it claimed had been used or acquired as part of a criminal enterprise. But the holdings in Real Property and Lamar apply whether the property owner was involved in the crime or merely an innocent owner of the property so used. In section 316.193(6)(d), the vehicles are not permanently taken; rather they are only temporarily taken, or impounded, after a conviction for drunk driving. We cannot say that the limited deprivation here requires even more constitutional protection than the permanent takings involved in Real Property and Lamar.
By the time of the conviction, the owner here had been arrested, given formal notice of the charges, had the assistance of counsel, and had an opportunity to have the case tried to a jury. She did not complain that she was not given some separate notice as to the penalty for DUI, which is effectually what *1120 she contends about the impoundment, yet the impoundment is part of the penalty for the conviction. Defendant apparently seeks to distinguish between cases where the owner of the vehicle is found guilty of driving that vehicle while drunk, and those cases where the vehicle was driven under the influence by someone other than the vehicle's owner. In the former instance, which happens to be the case here, all owners who undertake to drive their vehicles while under the influence have notice by virtue of the statutory provision that the vehicle is subject to impoundment if they are convicted of the offense.
They have notice of the impoundment in the same way they have notice that they can be fined and jailed for drunk driving. All persons are presumed to know the contents of criminal statutes and the penalties provided within them. Certainly, a statute may provide in express terms for an additional, written notice from the prosecutor if the state seeks certain penalties; e.g. the death penalty and the habitual felony offender statutes require prior written notice. We do not think that the due process clause, however, requires a formal, separate, written notice of vehicle impoundment to owner/drivers in addition to the notice given the offender when arrested.
We find little difference between taking away a DUI offender's driver's license for a discrete period and taking away the offender's vehicle. If the state can validly do the one, it can surely do the other. As in the case of drivers' licenses, the statute has explicit protection for those offenders who have no other public or private means of transportation.
Criminal laws often have different practical effects on wealthy offenders than they do on poor people. The rich may be able to afford bail, while the poor may not. The rich may be able to select and pay for their own lawyers, while the poor get what the system gives them. The rich are in many respects different because they have more money than the rest of us do.[2] Not every difference of wealth, however, gives rise to a constitutional confrontation. The fact that a wealthy drunk driver may afford a leased car  or even a chauffeur driven limousine  while his automobile is impounded does not produce an invalidity of equal protection or due process.
To the extent that defendant seeks to argue that non-driver owners are not given sufficient notice, we are unable to consider that contention. It is well established in Florida that a person to whom a statute can be constitutionally applied may not challenge the statute on the grounds that it may result in an impermissible application to someone else. State v. Hunter, 586 So.2d 319, 322 (Fla. 1991) (defendants cannot raise alleged due process violations suffered by third parties); State v. Benitez, 395 So.2d 514 (Fla. 1981); Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979); State v. Cifuentes, 617 So.2d 779 (Fla. 4th DCA 1993). As Justice Sundberg explained in Sandstrom:
"Fundamental constitutional principles dictate that one may not challenge those portions of an enactment which do not adversely affect his personal or property rights. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Champe, No. 53, 811, 373 So.2d 874 (Fla. Dec. 14, 1978); Land v. State, 77 Fla. 212, 81 So. 159 (1919). Such a personal stake in the outcome of the controversy is necessary in order `to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions(.)'"
370 So.2d at 4. The fact that this statute may operate in a different way on owners whose vehicle was being driven by someone else arrested for drunk driving is of no concern *1121 to those defendants who own and drive their own vehicles and suffer such an arrest.
This lack of standing to assert the constitutional interests of third parties actually disposes of all of defendant's remaining arguments. Her equal protection challenge is largely identical to the due process arguments.
REVERSED.
GUNTHER, C.J., and STONE, J., concur.
NOTES
[1] Section 316.193(6)(d) reads as follows:

"(6) With respect to any person convicted of a violation of subsection (1), regardless of any penalty imposed pursuant to subsection (2), subsection (3), or subsection (4):
* * * * * *
(d) In addition to the penalty imposed under paragraph (a), paragraph (b), or paragraph (c), the court shall also order the impoundment or immobilization of the vehicle that was driven by, or in the actual physical control of, the person who is convicted, unless the court finds that the family of the owner of the vehicle has no other public or private means of transportation. The period of impoundment or immobilization is 10 days, or, for the second conviction within 3 years, 30 days, or, for the third conviction within 5 years, 90 days and may not be concurrent with probation or imprisonment. If the vehicle is leased, the period of impoundment or immobilization may not extend beyond the expiration of the lease agreement. Within 7 business days after the date that the court issues the order of impoundment or immobilization, the clerk of the court shall send notice by certified mail, return receipt requested, to the registered owner of the vehicle if the registered owner is a person other than the person convicted under subsection (1) and to each person of record claiming a lien against the vehicle. All costs and fees for the impoundment or immobilization, including the cost of notification, must be paid by the owner of the vehicle or, if the vehicle is leased, by the person leasing the vehicle. The person who owns a vehicle that is impounded or immobilized under this paragraph, or a person having a lien of record against such a vehicle, may, within 10 days after the date that person has knowledge of the location of the vehicle, file a complaint in the county in which the owner resides to determine whether the vehicle was wrongfully taken or withheld from the owner or lienholder. Upon the filing of a complaint, the owner or lienholder may have the vehicle released by posting with the court a bond or other adequate security equal to the amount of the costs and fees for impoundment or immobilization, including towing or storage, to ensure the payment of such costs and fees if the owner or lienholder does not prevail. When the bond is posted and the fee is paid as set forth in s. 28.24, the clerk of the court shall issue a certificate releasing the vehicle. At the time of release, after reasonable inspection, the owner or lienholder must give a receipt to the towing or storage company indicating any loss or damage to the vehicle or to the contents of the vehicle."
[2] "He remembered poor Julian and his romantic awe of [the rich] and how he had started a story once that began, `The very rich are different from you and me.' And how someone had said to Julian, `Yes, they have more money.'"

Ernest Hemingway, The Snows of Kilimanjaro, THE FIFTH COLUMN AND THE FORTY-NINE STORIES (1938).