871 So.2d 249 (2003)
Colon Bernard MULLIGAN, Appellant,
v.
CITY OF HOLLYWOOD, Appellee.
No. 4D02-3626.
District Court of Appeal of Florida, Fourth District.
October 1, 2003.
Order Denying Rehearing and Granting Certification May 12, 2004.
*251 Ronald S. Guralnick, Miami, for appellant.
Daniel Abbott, City Attorney, and Robert Oldershaw, Chief Litigation Counsel, Hollywood, for appellee.
FARMER, C.J.
Today we consider the extent of municipal powers by ordinance to seize personal property used in the commission of a crime. In so doing, we also address whether a city's willingness to restore the property it has thereby seized, upon payment of an "administrative" fee, conduces to a finding of validity for such an ordinance. In the end we hold the ordinance in question invalid.
First we set the factual stage. The City of Hollywood (City) has adopted a vehicle "impoundment" ordinance. It purports to authorize the City to seize motor vehicles of those accused of violations of section 796.07, Florida Statutesthat is, offenses involving prostitution. According to the ordinance, a vehicle is subject to seizure whenever a police officer has probable cause to believe that the vehicle was used to facilitate prostitution. Ord. § 101.46(A)(3).
Upon seizure the vehicle is towed to a facility controlled by the City. The City then gives notice to the owner that the vehicle has been seized and that the owner has the right to a preliminary hearing. § 101.46(B)(1)-(3). The owner must request the hearing in writing within five days of the written notice. § 101.46(D)(1). The police chief is then required to schedule a hearing before another City official, called a "special master", within 96 hours. § 101.46(2).
At the preliminary hearing, the City has the burden to show probable cause to believe that the vehicle is subject to seizure. § 101.46(3). If the City official finds probable cause, the vehicle shall remain "impounded" unless the owner pays $500 plus towing and storage costs, or posts a bond in the same amount. § 101.46(4). The City must set a final hearing within 45 days from the date the vehicle was seized. § 101.46(e)(1).
The City has the burden at the final hearing to show by the greater weight of the evidence that the vehicle was properly seized under the ordinance and that the owner of the vehicle knew the vehicle was likely to be used to facilitate an act of prostitution. § 101.46(E)(2)(a), (b). If the City official finds that the City has carried its burden, the official enters a written determination that the owner is "civilly liable to the City for an administrative fee not to exceed $500, plus towing and storage costs." § 101.46(E)(2)(b). The vehicle remains seized until and unless the penalty assessed by the official is paid. § 101.46(E)(2)(b).
Mulligan (owner) was arrested for offering to commit prostitution in violation of section 796.07. The City seized his vehicle under the authority of ordinance section 101.46. The official found probable cause and ordered him to pay $500 or forfeit the bond he had previously posted. He paid the fee, and his vehicle was returned to him. The owner then filed suit challenging the validity of the ordinance. The court certified a class of "all owners of motor vehicles impounded by the City of Hollywood under the City of Hollywood Code, section 101.46." Both parties moved for summary judgment.
*252 The trial court's decision and rationale, omitting only formal parts, states as follows:
"The ordinance in question does not pass the `smell test.' In a somewhat similar context it was once noted that `[i]mproperly used, forfeiture could become more like a roulette wheel employed to raise revenue.'1 Further, `there is strength ... in the contention that ... [the ordinance at issue] seems to violate that justice which should be the foundation of the due process of law required by the Constitution.'2 However, this Court is constrained to follow precedent and uphold the practice in question, as the court just quoted did. Unfortunately, as Justice Thomas once noted, `the Federal Constitution does not prohibit everything that is intensely undesirable.'3 There are no fatal constitutional problems with this ordinance. Temporary impoundment is not a forfeiture scheme. The City is trying to deter illegal activity, not to punish."
1 Bennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 1001, 134 L.Ed.2d 68 (1996), J. Thomas, concurring.
2 Id. quoting J.W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 190, 65 L.Ed. 376 (1921).
3 Bennis at 1001-02.
The order went on to grant the city's motion and deny the owner's. This appeal followed.
Although the owner raises a number of challenges to the validity of the ordinance, we find it necessary to discuss only the following issues. He contends that in essence the ordinance effects a criminal forfeiture without the kind of process due for forfeitures of private property. And as a forfeiture scheme, he argues, it conflicts with state forfeiture statutes. He also maintains that the ordinance creates a "police court" exercising essentially judicial powers in violation of our constitutional separation of powers. It denies him, he claims, a right to trial by jury before his property may be taken.
We begin with the owner's contention that effectually impoundment under the Hollywood scheme is but a kinder, gentler description for what is actually a forfeiture. The supreme court once defined forfeiture in another context as "contemplat[ing] a loss of property or a right, vested in one, as a penalty for violating law...." Howard Cole & Co. v. Williams, 157 Fla. 851, 859, 27 So.2d 352, 356 (Fla. 1946). Proceedings under the ordinance do in fact begin with the police taking an owner's vehicle as a result of an alleged facilitation of an act of prostitution. The city then transfers the vehicle to a facility controlled by the City, where the vehicle is placed beyond the owner's control and use.
The owner is thus certainly dispossessed of that property until and unless he manages to recover it. A vehicle so seized remains "impounded" until the owner prevails or pays the "administrative fee" and all costs. Vehicles not "claimed" by prevailing at the hearings or by payment are "subject to disposal pursuant to chapter 705." Therefore, owners who do not prevail before the City's "special master" and who are unable to pay the "administrative fee" are thus subjected to a permanent loss of the vehicle. Hence, whether temporary (through payment of the fee) or permanent (as where the owner cannot or will not pay the "fee"), owners are deprived of certain rights in the seized vehicles "as a penalty for violating law." Whatever meaning may otherwise attach to its title, this ordinance functions well within Howard Cole & Co.'s general definition of a forfeiture.
A long line of authority in this State applies the principle that forfeitures are harsh remedies, not favored by the *253 legal system, and thus forfeiture statutes are strictly construed. See Byrom v. Gallagher, 609 So.2d 24 (Fla.1992); Butterworth v. Caggiano, 605 So.2d 56 (Fla. 1992); Dep't of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla.1991) ("In construing the [Florida Contraband Forfeiture] Act, we note that forfeitures are considered harsh exactions, and as a general rule they are not favored either in law or equity."); Fla. State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952); Boyle v. State, 47 So.2d 693 (Fla. 1950); City of Miami v. Miller, 148 Fla. 349, 4 So.2d 369 (1941). Strict construction in this context suggests that in doubtful cases the courts will construe ambiguous statutes, or even clear forfeiture provisions resting on uncertain authority, against any loss and in favor of an owner's retention of property. See Williams v. Christian, 335 So.2d 358, 361 (Fla. 1st DCA 1976) ("Statutes imposing forfeiture will be strictly construed in a manner such as to avoid the forfeiture and will be liberally construed so as to avoid and relieve from forfeiture."). Under this strict construction, in the absence of clear meaning and manifest authority we should construe the ordinance in question in a manner consistent with the interest of the owner and against the City.
With personal property, especially with motor vehicles, use is their critical value and for many owners their only measure. Under this ordinance, the seizure of the vehicle operates identically to a traditional forfeiture, in that it begins with the owner's dispossession of the property and the loss of the right of use until the thing is returned. In other words, the principal indeed often the onlyreason for having the thing is lost by the act of seizure. Calling the seizure an impoundment, rather than a forfeiture, hardly distinguishes the essential nature of the deprivation thereby inflicted from an ordinary forfeiture.
With this particular ordinance, the seizure (or impoundment) may end up being only temporary rather than permanent. An owner may post the bond before any hearing and thereby gain the return of the property. At that point, the owner's loss has certainly been ended short of permanency. Thus the ordinance is so written that any loss of possession and use of the thing may ultimately be limited to a finite duration short of the complete loss of the thing forever.
We note, however, that under the takings clauses of the State and Federal Constitutions, both temporary and permanent takings may be compensable. See U.S. Const., amend. V; and Art. X, § 6(a), Fla. Const.; see also First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); Keshbro v. City of Miami, 801 So.2d 864 (Fla.2001) (temporary closing of apartment complex was compensable taking). Similarly under the state criminal law of theft, there is no significant difference between a temporary taking of property and a permanent one. See § 812.014(1), Fla. Stat. (2001) ("A person commits theft if he or she knowingly obtains or uses ... the property of another with intent to, either temporarily or permanently, [e.s.] deprive the other person of a right to the property or a benefit from the property").
These recognitions are no doubt founded on the premise that even temporary deprivations of property may significantly and adversely affect the interests and lives of the owners. In the case of a motor vehicle, a deprivation that is only temporary may yet mean the loss of the only transportation available to the owner at crucial times. Even temporary losses of transit may result in adverse consequences *254 to an individual or a family. Jobs may be lost, medical treatments foregone, the necessaries of life made thereby unavailable. These effects may be as significant as those resulting from any permanent taking. Temporary forfeitures may therefore be just as constitutionally significant as permanent ones.
Our decision in State v. Ginn, 660 So.2d 1118 (Fla. 4th DCA 1995), is not to the contrary. In that case we considered a state statute allowing for a temporary seizure of a motor vehicle at the time of an arrest for driving under the influence. We reversed a trial court decision holding the statute facially unconstitutional. The defendant had challenged the statute as failing to provide written notice before the seizure, citing Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991), and Lamar v. Universal Supply Co. Inc., 479 So.2d 109 (Fla.1985). In finding no constitutional defect in the failure to give a pre-seizure notice apart from the arrest and its notice of the criminal violation, we said:
"In section 316.193(6)(d), the vehicles are not permanently taken; rather they are only temporarily taken, or impounded, after a conviction for drunk driving. We cannot say that the limited deprivation here requires even more constitutional protection than the permanent takings involved in Real Property and Lamar." [e.s.]
660 So.2d at 1119. Properly understood, Ginn merely holds that temporary takings do not require more procedural process than permanent takings.[1]Ginn implicitly recognized that temporary takings may require as much process as permanent ones; they simply do not require more. Our decision today is consistent with the asmuch-but-not-more holding of Ginn.
Nor does the ability to redeem the thing for a $500 "administrative fee" (plus costs) convert what might otherwise be deemed a forfeiture into a more generously regarded "fee" or "tax". The mere fact that an unauthorized seizer of property (whether a governmental entity, as here, or even simply a thief) is willing to return the goods unauthorizedly taken but only upon payment of a price does not eliminate the fact that the taker illegally took the goods in the first place. And the added inducement that the price he will accept is relatively smallless than its fair market value, for exampledoes not erase the fact that the goods were taken without authority and thus unlawfully. If the seizer lacks the authority to seize, the willingness of the seizer to be moderate in the price he charges to restore his booty to its rightful owner is hardly a reason for the law to acquiesce in his illegal seizure. It is, in fact, only the unauthorized seizure that makes it possible for the taker to wring the redemption price from its owner.
In sum, with this "impoundment" ordinance we see little distinction between a temporary seizure of property and a permanent one. If permanent deprivations of property are forfeitures, so too should even some temporary deprivations be so deemedat least for the purposes of testing their validity and the kind of process that may be due to carry them out. And as we have shown, we are not dissuaded by any moderation in the size of the fee wrung from the owner to gain the property's return to excuse the impropriety from seizing it in the first place. We thus proceed upon the conclusion that the ordinance effects a forfeiture of the vehicles *255 thus seized and turn to the question of the forfeiture's validity.
The trial court's decision seems at first glance to be based exclusively on federal constitutional grounds, because it relies on Bennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996). Essentially, Bennis decided that there is no such thing in federal constitutional law as an innocent owner's defense in forfeiture cases and that the forfeiture of an innocent owner's interest in property used in the commission of a crime does not violate the federal constitutional proscription against takings of private property for a public purpose without just compensation. The trial court's reliance solely on Bennis might suggest that it decided the case merely on federal constitutional grounds.
But it is a well worn judicial canon that a court will not decide constitutional questions if an issue can be determined on any other grounds. State v. Tsavaris, 394 So.2d 418 (Fla.1981); Wooten v. State, 332 So.2d 15 (Fla.1976); Singletary v. State, 322 So.2d 551 (Fla.1975); Jones v. City of Sarasota, 89 So.2d 346 (Fla.1956); and State v. Efthimiadis, 690 So.2d 1320, 1322 (Fla. 4th DCA 1997) (fundamental maxim of judicial restraint that courts should not decide constitutional issues unnecessarily); see also State v. Boyd, 846 So.2d 458, 459 (Fla.2003) (finding no reason to decide case on constitutional grounds and adhering to settled principle of constitutional law that courts should endeavor to enforce purpose of statutes to avoid constitutional issues); State v. Mozo, 655 So.2d 1115 (Fla.1995) (same); State ex rel. City of Casselberry v. Mager, 356 So.2d 267 (Fla.1978) (courts always avoid constitutional issues); Chiapetta v. Jordan, 153 Fla. 788, 16 So.2d 641 (1943) (courts always endeavor to preserve statutes and to avoid constitutional issues).[2] Thus before the trial judge could have reached any Bennis issue in this case, he necessarily had to have resolved all of the owner's state law arguments in favor of the City. It would have been unnecessary to answer any federal constitutional question if the court had decided the issues in owner's favor on state statutory or constitutional grounds. We therefore presume that he decided the state law contentions adversely to the plaintiff and look first to those issues. In so doing, we find it unnecessary to address any questions of federal constitutional law.
Owner contends that the ordinance is preempted by state statute. Under law, Florida municipalities do not have unlimited legislative authority. See Zorc v. City of Vero Beach, 722 So.2d 891 (Fla. 4th DCA 1998) ("Municipal ordinances are *256 inferior to laws of the state and must not conflict with any controlling provision of a statute." See Thomas v. State, 614 So.2d 468, 470 (Fla.1993)) ("A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden."). Section 166.021(3) recognizes that cities may not legislate in an area expressly preempted by state legislation. See Art. VIII, § 2(b), Fla. Const. and § 166.021(3), Fla. Stat. (2002). Turning to a specific statute dealing with forfeitures arising from crimes, under the Florida Contraband Forfeiture Act (FCFA):
"It is the policy of this state that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles for criminal purposes while protecting the proprietary interests of innocent owners and lienholders...."
§ 932.704(1), Fla. Stat. (2002). This statute requires that law enforcement agenciesand that term surely includes city police departments "shall [e.s.] utilize the provisions of [FCFA]" to seize contraband employed to facilitate crimes of prostitution. We read this as an express preemption by general law of municipal criminal contraband forfeiture laws. Hence cities are precluded from legislating in this area to this extent and may not adopt ordinances on the same subject, and surely not conflicting provisions.
Having decided that FCFA preempts contrary municipal forfeiture provisions for criminal contraband, we note that FCFA pertinently defines "contraband" as:
"Any personal property, including ... any ... vehicle of any kind ... which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, whether or not comprising an element of the felony...." [e.s.]
§ 932.701(2)(a)5, Fla. Stat. (2002). Forfeiture under FCFA is thus limited to acts that constitute felonies. The act for which owner was arrested was a misdemeanor. The statute's requirement of a felony implicitly excludes forfeitures based on misdemeanors and limits forfeiture to cases involving a felony. See Farmer v. Broward County, 632 So.2d 658, 659 (Fla. 4th DCA 1994) ("Applying the familiar principle of statutory construction of expressio unius est exclusio alterius (the mention of one thing implies the exclusion of another), the inclusion only of convicted defendants in the section implies the exclusion of acquitted defendants."). Because the ordinance purports to authorize the forfeiture of motor vehicles used in connection with mere misdemeanors, it is in direct conflict with FCFA's limitation to felonies.
Apart from a preemption of the forfeiture area, we also note the ordinance conflicts with FCFA section 932.704(2)-(4) providing for judicial proceedings, instead of an administrative agency, and for jury trials. The ordinance fails to provide for judicial proceedings de novo and a trial by jury. Instead it relegates the important issue of the propriety of the seizure to a municipal agency, thus bypassing the court and jury. Even if the entire area of forfeitures were not preempted by FCFA, the statute would not authorize conflicting ordinances.
Because we conclude that FCFA preempts the impoundment ordinance, we reverse the final order under review and remand for proceedings in harmony with our determination.
POLEN and MAY, JJ., concur.

*257 ON MOTION FOR REHEARING

FARMER, C.J.
We deny the City's motion for rehearing but certify to the supreme court the following question of great public importance:
Does the Florida Contraband Forfeiture Act preempt local governments from adopting ordinances imposing forfeiture of personal property for misdemeanor offenses?
We deny all post-opinion motions by nonparties for leave to appear as amici curiae on rehearing.
POLEN, J., concurs.
MAY, J., concurs specially with opinion.
MAY, J., specially concurs.
I agree with the majority's holding and reasoning that despite the fact that the City of Hollywood's ordinance refers to "impoundment" of vehicles it is tantamount to a "forfeiture." Howard Cole & Co. v. Williams, 157 Fla. 851, 859, 27 So.2d 352, 356 (Fla.1946). I also agree that the Florida Contraband Forfeiture Act (FCFA) is "limited to acts that constitute felonies." It is here that I temporarily part company with the majority.
Because the FCFA is limited to felonies, it seems to me that local government may legislate with regard to misdemeanors through its municipal home rule powers. "As provided in s.2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." § 166.021(1), Fla. Stat. (2003) (emphasis added). The FCFA does not expressly prohibit local government from legislating in the area of forfeitures with regard to misdemeanors. It does not therefore expressly preempt the impoundment ordinance.
I do not believe that because the FCFA addresses felonies that it "implicitly" excludes local government legislation concerning misdemeanors. This court has previously held that a local ordinance creating a lien for special counsel on acquitted defendants conflicted with state law limiting the attorney's fees lien to guilty defendants. See Farmer v. Broward County, 632 So.2d 658 (Fla. 4th DCA 1994). However, in Farmer, the state law had previously expressly preempted local government from legislating with regard to such liens. The legislature had then amended the statute to limit its application to only defendants found guilty. This expressed an intent on the part of the legislature to exclude acquitted defendants from the purview of the statute. Such is not the case in the forfeiture statute.
However, the FCFA expressly provides the requisite scheme for effectuating forfeitures to assure due process. "It is the policy of this state that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles for criminal purposes while protecting the proprietary interests of innocent owners and lienholders...." § 932.704(1), Fla. Stat. (2002). Thus, local government enactments relating to forfeitures would have to comply with the procedural requirements of the FCFA so as not to conflict. The City of Hollywood's ordinance fails in this regard. Thus, I re-join the majority and agree with its alternative holding that the ordinance conflicts with the FCFA in its requisite procedural requirements. For this reason, I join in the reversal of the summary judgment in favor of the City of Hollywood.
NOTES
[1] Ginn did not stress the public safety concern in eliminating the danger posed by a drunk driver. The interest of the State in temporarily impounding vehicles of drunk drivers needs no further explanation.
[2] The cases in this state supporting the principle of constitutional parsimony are extensive. See also Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla., 1974); Williston Highlands Development Corp. v. Hogue, 277 So.2d 260 (Fla.1973); Walsingham v. State 250 So.2d 857 (Fla.1971); Green v. State, 166 So.2d 585 (Fla.1964); State ex rel. Losey v. Willard, 54 So.2d 183 (Fla.1951); State ex rel. North St. Lucie River Drainage Dist. v. Kanner, 152 Fla. 400, 11 So.2d 889 (1943); L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121 (1931); State ex rel. Atlantic C.L.R. Co. v. State Bd. of Equalizers, 84 Fla. 592, 94 So. 681, (1922); State ex rel. Wolyn v. Apalachicola N.R. Co., 81 Fla. 394, 88 So. 310 (1921); Crawford v. State, 662 So.2d 1016 (Fla. 5th DCA 1995); Matthews v. Weinberg, 645 So.2d 487 (Fla. 2nd DCA), review den., 654 So.2d 919 (Fla.1995); Freedman v. State Board of Accountancy, 370 So.2d 1168 (Fla. 4th DCA 1979); Board of County Comm'rs v. Sloan, 214 So.2d 74 (Fla. 2d DCA 1968); Green v. Peters 140 So.2d 601 (Fla. 2d DCA), cert. den. 146 So.2d 754 (Fla.1962); State ex rel. Bankers Life & Casualty Co. v. North Palm Beach, 138 So.2d 378 (Fla. 2d DCA 1962). We do well not to lose sight of this principle of parsimony, no matter how persistent advocates may be in asserting constitutional questions.