COPE, J.
(dissenting).
The majority opinion is contrary to decisions of the Florida Supreme Court, other district courts of appeal and this court which mandate a strict construction of forfeiture statutes. The majority opinion fails to address, much less apply, the correct legal standard.
I.
The appellee Pension Board[6] has ordered the forfeiture of the pension of the former City of Miami Police Chief, Donald H. Warshaw. Warshaw pled guilty in federal court to one count of mail fraud in violation of 18 U.S.C. § 1341.
Under Florida law, a public employee’s pension may be forfeited if the public employee is convicted of an offense specified in paragraph 112.3173(2)(e), Florida Statutes (1993).[7] The question presented by this appeal is whether the crime of which Warshaw was convicted falls within the scope of the statute.
When the possibility of a forfeiture of Warshaw’s pension was first presented to *896 the Pension Board, the Board’s attorney-advised the Board that Warshaw’s conviction did not fall within the scope of the statute and that the pension could not be forfeited. The Board appointed outside counsel to serve as special prosecutor. The special prosecutor concluded that War-shaw’s crime fell within the scope of the statute. The Board accepted the special prosecutor’s view of the statute and, after a hearing, declared (by a 5-3 vote) that Warshaw’s pension would be forfeited.
Warshaw has appealed.
II.
The threshold question is what rule of construction to apply in interpreting this statute. The majority opinion completely ignores this point.
The Florida Supreme Court has said that “forfeitures are considered harsh ex-actions, and as a general rule they are not favored either in law or equity. Therefore, this court has long followed a policy that it must strictly construe forfeiture statutes.” Department of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla.1991) (citing General Motors Acceptance Corp. v. State, 152 Fla. 297, 11 So.2d 482, 484 (1943); City of Miami v. Miller, 148 Fla. 349, 4 So.2d 369, 370 (1941)) (emphasis added); see also Byrom v. Gallagher, 609 So.2d 24, 26 (Fla.1992) (same).
“Forfeiture statutes are not favored and are strictly construed in favor of the party against whom the penalty is sought to be imposed.” Cabrera v. Department of Natural Resources, 478 So.2d 454, 455-56 (Fla. 3d DCA 1985) (citing inter alia, Boyle v. State, 47 So.2d 693 (Fla.1950)).
Writing about the statute now before us, the pension forfeiture statute, the First District said:
No citation of authority is required to support the rule that forfeitures are not favored in law. They are considered harsh exactions, odious, and to be avoided when possible. Statutes imposing forfeiture will be strictly construed in a manner such as to avoid the forfeiture and will be liberally construed so as to avoid and relieve from forfeiture.
Williams v. Christian, 335 So.2d 358, 361 (Fla. 1st DCA 1976) (footnote omitted; emphasis added); see Mulligan v. City of Hollywood, 871 So.2d 249, 252-53 (Fla. 4th DCA 2003) (citing Williams v. Christian).
Thus, “[t]he determinative analysis of the question before us begins, proceeds and ends with the particular terms of the authorizing statute which, because the law is said to abhor forfeitures, must be strictly construed.” Flam v. City of Miami Beach 449 So.2d 367, 368 (Fla. 3d DCA 1984) (citations omitted) (Schwartz, C.J.).
III.
The question to be decided is whether Warshaw’s crime falls within the terms of the forfeiture statute. It is not enough that Warshaw was convicted of a crime while he was public employee, nor is it enough that the crime bears some relationship to his public duties.
In order to exact a forfeiture of War-shaw’s pension, the conviction must be a “specified offense” within the terms of the forfeiture statute, section 112.3173, Florida Statutes. Further, to the extent that there is any doubt about whether War-shaw’s crime is a statutorily “specified offense,” that doubt must be resolved in favor of Warshaw and against the forfeiture.
Under the statute, a “specified offense” includes “1. The committing, aiding, or abetting of an embezzlement of public funds[.]” § 112.3173(2)(e)l., Fla. Stat. The statute does not contain a definition of “public funds.”
*897 Public funds means “[t]he revenue or money of a governmental body.” Black’s Law Dictionary 682 (7th ed.1999). Plainly put, it means money in the City public treasury.
In this case, however, Warshaw was not convicted of embezzling city funds. He was instead convicted (pursuant to a plea bargain) of embezzling funds belonging to a private nonprofit corporation called (ironically) Do The Right Thing (“DTRT”). Warshaw was the treasurer of DTRT and misused his position to steal money from the DTRT account.
There is no dispute that the embezzled funds were in the bank account of DTRT when Warshaw took them. The federal Superseding Information set forth a list of cash amounts which Warshaw withdrew from the DTRT account and deposited in his personal account. Superseding Information at 3-4. The Superseding Information also listed eight checks which War-shaw wrote on the DTRT bank account, which were used to pay Warshaw’s personal expenses. Id. at 4. Warshaw committed mail fraud because the United States mail was used to transmit one of the checks written to carry out the fraud.
Since the funds were within DTRT’s bank account when Warshaw embezzled them, they were clearly not public funds. And if there were any doubt about the matter, the doubt would have to be resolved in favor of Warshaw. See Williams v. Christian, 335 So.2d at 361. That is so because, as this court has previously held, “Forfeiture statutes are not favored and are strictly construed in favor of the party against whom the penalty is sought to be imposed.” Cabrera, 478 So.2d at 456.
The majority contends, however, that in deciding whether Warshaw should forfeit his pension, the Pension Board may consider the fact that in his capacity as police chief, Warshaw initiated funding requests to the Miami City Commission for grants to be made from the City of Miami Law Enforcement Trust Fund (“the Trust Fund”) to DTRT. Grants from the Trust Fund were the primary source of funding for DTRT.[8]
The majority opinion reasons that War-shaw was involved in a two-step process. In the first step, he requested grants from the Trust Fund to DTRT. These were public funds that were granted to DTRT. In the second step, Warshaw embezzled funds from the DTRT account. The majority argues that if the scheme is examined as a whole, it included acts which Warshaw carried out in his capacity as police chief (step one). According to the majority, it makes no difference that War-shaw’s conviction was solely for acts he committed at DTRT in step two.
If we were not dealing with a forfeiture statute, I would agree with the majority. However, under well established forfeiture law, the forfeiture statute must be “strictly construed in favor of the party against whom the penalty is sought to be imposed.” Cabrera, 478 So.2d at 456; see Williams v. Christian, 335 So.2d at 361.
Applying that legal standard to the facts of this case, the forfeiture cannot be upheld on the theory that Warshaw embezzled public funds. The funds lost their status as public funds when they left the City treasury. Further, the DTRT bank account included corporate donations and gifts as well as the City’s donations.[9]
*898 The Superseding Information only charged Warshaw with embezzling the funds of DTRT, a nonprofit corporation. That is the crime of which Warshaw was convicted. The Superseding Information does not mention, or charge Warshaw with any crime involving, the Trust Fund.[10]
The majority opinion takes the position that it makes no difference whether the trust funds remained within the City treasury or were transferred to DTRT. The majority states that “the funds always were slotted for public uses.” Majority opinion at 6 (footnote omitted).
The majority analysis is contrary to law. The statute authorizes forfeiture of the pension if — and only if — the employee committed “an embezzlement of public funds.” § 112.3173(2)(e)l. (emphasis added). The grant funds were undoubtedly intended to be used by DTRT for public benefit, but that does not transform their character into being public funds. The majority opinion attempts to construe the statutory definition of “public funds” broadly, but under the applicable rule of construction we are obliged to construe that definition narrowly. Under the required strict construction, they were no longer “public funds” when they left the public treasury.
IV.
The Pension Board argues alternatively that the forfeiture may be justified under other provisions of the forfeiture statute. The definition of “specified offense” includes “[t]he committing, aiding, or abetting of any theft by a public officer or employee from his or her employer[.]” § 112.3173(2)(e)2„ Fla. Stat.
This claim fails as well. The charge in the Superseding Information was theft from DTRT, not theft from the City of Miami.
The Pension Board also relies on another portion of the definition of “specified offense” which states:
6. The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.
Id. § 112.3173(2)(e)6.
This provision is likewise unavailable. Under the Superseding Information War-shaw was charged with embezzlement from DTRT. He was not charged with, or *899 convicted of, committing criminal acts as police chief.
V.
In conclusion, the majority opinion reads the forfeiture statute broadly in favor of the government, instead of construing it strictly against the government. The majority does that by saying that the embezzled funds were “public funds” even though they had been granted to DTRT and were no longer in the City treasury.
In dealing with other legal disputes, the majority opinion might be perfectly permissible — but here we construe a forfeiture statute. When the statute is construed in the required light, it is clear that the forfeiture order must be reversed.

. The Board of Trustees of the City of Miami Firefighters' and Police Officers' Retirement Trust ("the Pension Board”).

.The applicable version of the pension forfeiture statute is the one in effect on the date of the criminal acts. See Busbee v. State Division of Retirement, 685 So.2d 914, 916-17 (Fla. 1st DCA 1996). The criminal charge to which Warshaw pled guilty was set forth in a Superseding Information filed April 27, 2001. The Superseding Information charged that the criminal scheme occurred between May 1993 and October 1995. Thus, the 1993 version of the statute is applicable. As relates to the issue now before us, there is no material difference between the 1993 statute and the present version.

. The remainder of DTRT’s funding came from corporate donations and DTRT’s own fund-raising efforts.

. Those donors would likely be surprised to find that their donations were converted into “public funds” by virtue of being commingled *898 with City donations. See Majority Opinion at 895 n. 4.

. Warshaw was originally charged by an Indictment which included other criminal charges. The Indictment included allegations that funding for DTRT came primarily from the Trust Fund. It did not, however, allege that Warshaw arranged those transfers. Warshaw entered into a plea bargain with the United States Attorney. The Government filed a Superseding Information, which omitted any reference to the Trust Fund. It is the final conviction under the Superseding Information, not the earlier (withdrawn) Indictment that is relevant for purposes of the forfeiture statute. See Williams v. Christian, 335 So.2d at 360-61.
Even under the original Indictment, Warshaw was not charged with criminal conduct in arranging the transfers from the Trust Fund to DTRT. The Indictment charged Warshaw with multiple crimes (18 U.S.C. §§ 371, 1341, 1346, 2) relating to the Pension Fund itself and DTRT.