900 So.2d 574 (2004)
Joseph E. GAUDET, Appellant,
v.
FLORIDA BOARD OF PROFESSIONAL ENGINEERS, Appellee.
No. 4D03-340.
District Court of Appeal of Florida, Fourth District.
October 13, 2004.
*575 Marjorie J. Maginnis of Watterson & Hyland, P.A., Palm Beach Gardens, for appellant.
Charles J. Crist, Jr., Attorney General, John J. Rimes, III, Lee Ann Gustafson, and Paul Martin, Assistant Attorneys General, Tallahassee, for appellee.
KRATHEN, DAVID H., Associate Judge.
Joseph E. Gaudet ("Gaudet") appeals a Final Order of the Florida Board of Professional Engineers ("Board") denying his petition for licensure as an engineer by endorsement, pursuant to section 471.015(3)(a) and (b), Florida Statutes (2002). Gaudet is a 1985 graduate of Drexel University in Philadelphia, Pennsylvania, from which he earned a Bachelor of Science in Commerce and Engineering Sciences degree. Since receiving his degree, Gaudet has practiced as a full-time engineer. He obtained his engineering license from the State of Pennsylvania in 2001.
Gaudet asserted that subsections (a) and (b) of section 471.015(3), Florida Statutes, are mutually exclusive and that he qualified for licensure under both sections. Despite acknowledging that Gaudet met the examination and experience requirements for a license by endorsement in Florida, the Board concluded that he did not qualify for a license by endorsement under section 471.015(3)(a), because he did not receive a degree from a Board approved engineering program, as defined in the Board's duly promulgated rules. See Fla. Admin. Code R. 61G15-20.001(2). That was because the program of study from Drexel, in which Gaudet earned his degree, was not accredited by the Engineering Accreditation Commission of the Accreditation Board of Engineering and Technology (ABET). Further, the Board determined that when Gaudet received his Pennsylvania license, that state did not require ABET accreditation for an applicant's *576 degree program, so Pennsylvania did not have a statute that was substantially the same as Florida's and therefore Gaudet was not eligible for licensure by endorsement under section 471.015(3)(b).
Gaudet supplemented his application with a schedule of the courses he completed at Drexel University in the Commerce and Engineering Sciences program, along with a comparison of his program with ABET approved programs at other institutions. Gaudet argued that the comparison revealed Drexel's curriculum was "substantially similar" to the other universities' programs, as that term has been defined by the Board in its rules for applicants having degrees from foreign institutions. See Fla. Admin. Code R. 61G15-20.007(2),
In addition, Gaudet provided an analysis of Florida's statutes and regulations as they applied to his application, a letter from the Director of Commerce & Engineering at Drexel explaining the elements of its engineering program, and Pennsylvania's regulations for professional engineers. He again asserted that the licensing requirements for a professional engineer's license in that state were substantially similar to the licensing requirements for a professional engineer's license in Florida in 2001. Finally, Gaudet requested an administrative hearing under Chapter 120, Florida Statutes. The Board thereafter notified Gaudet that it had reviewed his supplemental information and that it did not overcome the problem which was the basis for denial. The Board then scheduled an informal hearing.
At the informal hearing, although conceding that his degree was not ABET accredited, Gaudet explained that there were extenuating circumstances and asked the Board to evaluate Drexel's educational curriculum, pursuant to section 471.013(1)(a). He argued that this evaluation would be done routinely, pursuant to rule 61G15-20.007, if he had attended a foreign school. Gaudet again claimed that such an evaluation would establish that he met the criteria under section 471.015(3)(a), as the curriculum for a Bachelor of Science degree in Commerce and Engineering Sciences from Drexel University was substantially equivalent to those programs accredited by ABET, as defined by the Board in rule 61-G15-20.007(2).
Gaudet also contended that he was qualified for licensure under section 471.015(3)(b). He argued that section 471.015(3)(b) requires a review of the Pennsylvania licensing requirements and asked the Board to review Pennsylvania's licensing statute. He maintained that Pennsylvania's licensing requirements were substantially the same as those in Florida at the time he received his Pennsylvania license in 2001.
Although Gaudet asserted that subsections 471.015(3)(a) and (b) are mutually exclusive, the Board reasoned that since Gaudet was licensed in Pennsylvania based on an educational curriculum and school not accredited by ABET, the criteria in Pennsylvania could not have been substantially the same as an ABET accredited program. Therefore, it denied Gaudet a license by endorsement under section 471.015(3)(b), as well as section 471.015(3)(a), and adopted the facts set forth in the original Notice of Denial as its findings of fact.
Judicial review of final administrative orders is authorized by section 120.68(1), Florida Statutes. Appellate courts are free to disagree with an agency on a point of law. See Southwest Fla. Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594, 597 (Fla. 1st DCA 2000). Although courts should give great weight to an agency's construction of a *577 statute that it is charged with enforcing and interpreting,[1] section 120.68(7)(d) provides in material part that the court may "set aside agency action" when it finds that the agency has "erroneously interpreted a provision of law and [that] a correct interpretation compels a particular action." § 120.68(7)(d), Fla. Stat. (2002); Metro. Dade County v. Dep't of Envtl. Prot., 714 So.2d 512, 515 (Fla. 3d DCA 1998); Schrimsher v. Sch. Bd. of Palm Beach County, 694 So.2d 856, 861 (Fla. 4th DCA), rev. denied, 703 So.2d 477 (Fla.1997).
Gaudet argues that the findings of fact stated in the final order entered by the Board are not supported by competent substantial evidence. The fact cited, which the Board concedes is erroneous, is that Gaudet was licensed in Massachusetts in 1995. In reality, Gaudet was licensed in Pennsylvania in 2001. While this fact, if the Board had relied upon it in determining whether Gaudet qualified for a license by endorsement, might have been the basis for an erroneous decision, it is apparent from the record that the mistake is merely a scrivener's error, which did not affect the result. See Kolbe v. Dep't of Ins., 846 So.2d 656 (Fla.2d 2003); McCloud v. State, 765 So.2d 826 (Fla. 2d DCA 2000). The record contains the transcript of the hearing where Gaudet immediately corrected a misstatement of that fact by the Board's counsel, and Gaudet's license application, documentation of his license from Pennsylvania, and copies of the relevant Pennsylvania licensing statutes. Since the scrivener's error is clearly apparent from the record, on remand the Board is instructed to correct the error. See Mitchell v. Mitchell, 841 So.2d 564, 568 (Fla. 2d DCA 2003).
Gaudet also maintains that the Board unlawfully delegated its statutorily mandated authority when it abdicated its duty under section 471.013, Florida Statutes (2002), to adopt specific rules for reviewing and approving engineering schools and curricula to ABET. Therefore, Gaudet argues, the Final Order must be set aside and rule 61G15-20.006, Florida Administrative Code, upon which it is based, be declared unconstitutional.
Gaudet contends that the Board erroneously interpreted subsections 471.015(3)(a) and (b) in concluding that he was not entitled to a license. He argues that under section 471.015(3)(a) the Board was required to review his education and could not rely solely upon whether Drexel University's program was ABET accredited. He further maintains that under section 471.015(3)(b) the Board was required to review Pennsylvania's licensing criteria. Gaudet asserts that the Board abdicated the responsibilities mandated by the statute. He argues that the Board should have adopted rules that fully comply with its responsibility to review all degrees; that the Board could not lawfully delegate to ABET the obligations delegated to the Board by the Florida Legislature.
The Board disputes that it is required by Florida law to "conduct an independent evaluation of [Gaudet's] education" or that it is required to review domestic degrees that are not ABET accredited. The Board also argues that it was Gaudet's duty to present evidence that Pennsylvania conducted such an evaluation before that state permitted him to utilize his non-accredited educational background to qualify for a license in that state.
Chapter 471, Florida Statutes, regulates the practice of engineering in this state. The Board of Professional Engineers was created by section 471.007 and granted the *578 authority by section 471.008 to adopt rules to implement the provisions of Chapters 471 and 455, Florida Statutes.
However, the Board is not vested with authority to expand upon its enabling statutes:
While rule adoption is a standard activity of modern agencies, rulemaking authority is not an inherent power of executive agencies. The Florida Legislature delegates to agencies the authority to adopt rules that implement, enforce, and interpret a statute through the adoption of enabling statutes. It has long been the case in Florida that the Legislature may not, in an enabling statute, provide agencies with unbridled authority to determine what the law is. A statutory delegation of rulemaking authority must declare the legislative policy or standard, be complete in itself, and limit the power delegated.
Florida APA Symposium: An Overview of the 1996 Administrative Procedure Act, 48 Fla. L.Rev. 1, 32 (Jan.1996).
In section 471.015(3), the Legislature mandated that the Board certify an individual as qualified for a license by endorsement when such applicant meets either one of the two enumerated standards. It states that:
The board shall certify as qualified for a license by endorsement an applicant who:
(a) Qualifies to take the examination as set forth in s. 471.013, has passed a United States national, regional, state, or territorial licensing examination that is substantially equivalent to the examination required by s. 471.013, and has satisfied the experience requirements set forth in s. 471.013; or
(b) Holds a valid license to practice engineering issued by another state or territory of the United States, if the criteria for issuance of the license were substantially the same as the licensure criteria that existed in this state at the time the license was issued.
§ 471.015(3), Fla. Stat. (2002).
Section 471.013 provides, in relevant part, the following prerequisites to taking an examination to practice as an engineer and, therefore, for qualifying for a license by endorsement under section 471.015(3)(a), above:
A person shall be entitled to take an examination for the purpose of determining whether she or he is qualified to practice in this state as an engineer if the person is of good moral character and:
1. Is a graduate from an approved engineering curriculum of 4 years or more in a school, college, or university which has been approved by the board and has a record of 4 years of active engineering experience of a character indicating competence to be in responsible charge of engineering.
§ 471.013(1)(a)1, Fla. Stat. (2002).
Therefore, under Florida law, licensure by endorsement can be obtained in only two ways. Individuals who meet the present Florida requirements for education and experience, including having graduated from "an approved engineering curriculum . . . [from] a school . . . which has been `approved by the board,'" and having passed a "substantially equivalent" examination are eligible for licensure by endorsement under section 471.015(3)(a). §§ 471.013(1)(a)1 and 471.015(3), Fla. Stat. The foregoing provision is available for an applicant seeking licensure by endorsement, even if such a person does not hold a license from another state. Alternatively, those persons who hold licenses from another state, if the educational, experiential and examination criteria for issuance were "substantially the same" to the then existing *579 requirements in Florida, are eligible for licensure by endorsement, as provided in section 471.015(3)(b).
The legislature delegated and, in fact, mandated that the Board adopt rules for reviewing and approving the curricula and schools from which an applicant must graduate to qualify under section 471.013(1)(a) and, therefore, licensure by endorsement under section 471.015(3)(a). Section 471.013(1)(a) states:
The board shall adopt rules providing for the review and approval of schools or colleges and the courses of study in engineering in such schools and colleges. The rules shall be based on the educational requirements for engineering as defined in s. 471.005. The board may adopt rules providing for the acceptance of the approval and accreditation of schools and courses of study by a nationally accepted accreditation organization.
§ 471.013(1)(a), Fla. Stat. (2002) (emphasis added).
In purported compliance with the above, the Board promulgated rules 61G15-20.001(2) and 61G15-20.006. Rule 61G15-20.001(2) states, in pertinent part:
(2) "Board approved engineering programs" shall mean:
(a) Engineering programs accredited by the Engineering Accreditation Commission of the Accreditation Board for Engineering and Technology, Inc. (EAC/ABET), programs approved by ABET as substantially equivalent to EAC/ABET accredited programs in the United States, including those programs accredited by foreign boards that are signatories to the Washington Accord, approved by the Board of Professional Engineers as substantially equivalent to an EAC/ABET accredited engineering program pursuant to Rule 61G15-20.007, F.A.C.
Fla. Admin. Code R. 61G15-20.001(2)(a).
Rule 61G15-20.006, Florida Administrative Code, provides:
(1) The evaluation of curricula and standards of accreditation for approval of degree programs required by Section 471.013, F.S., shall be based upon:
(a) An overview of engineering programs within the United States accredited by the Engineering Accreditation Commission of the Accreditation Board for Engineering and Technology, Inc., (ABET), and
(b) An evaluation of such programs and schools, following the definition of the practice of engineering set forth in Section 471.005(6), F.S.
(2) This rule shall not apply to Board approved engineering programs or where ABET accreditation is available to a school or college of engineering.

(3) Acceptable curricula requirements and degree programs shall conform to the criteria for accrediting engineering programs set forth by the Engineering Accreditation Commission of the Accreditation Board for Engineering and Technology, Inc., (ABET) and found in the applicable Annual Report of ABET.
(4) The evaluation of the applicant's transcript and degree program shall include a determination of whether such a transcript and degree program is comparable to the above-mentioned model by the Education Advisory Committee as defined in Rule 61G15-18.015.
(5) In order to verify the applicant's curriculum and engineering program the Board may require evidence from the applicant's institution(s) at the cost of the applicant as to the areas mentioned in 61G15-20.006(3), including when the information necessary for the evaluation *580 set forth in (4) above is not available, a site visit by Educational Advisory Committee of the Board at the expense of the applicant.
Fla. Admin. Code R. 61G15-20.006 (emphasis added).
Rule 61G15-20.001(2)(a) defines board approved programs as those that are accredited by ABET, or approved by ABET as substantially equivalent thereto. Further, Rule 61G15-20.006(2), quoted above, adopts ABET criteria and expressly states that it does not apply to Board approved programs and schools in areas where ABET accreditation is available. The Board interprets these rules as making ABET accredited schools and curriculum "approved" and making schools and curricula in areas where ABET accreditation is available, but has not been obtained, ineligible for approval. Therefore, the Board promulgated a rule specifying specific criteria for approval of schools and curricula for applicants having degrees for foreign institutions, where ABET accreditation is not available. See Fla. Admin. Code R. 61G15-20.007. However, it has failed and refused to promulgate a similar rule for schools and curricula where ABET accreditation is geographically available, relying upon the sentence in section 471.013(1)(a), which says: "The board may adopt rules providing for the acceptance of the approval and accreditation of schools and courses of study by a nationally accepted accreditation organization." (emphasis added).
Section 471.013(1)(a) uses the word "shall" to mandate that the Board adopt rules for reviewing schools and courses of study. The language is clear and needs no interpretation. Although the final section of the paragraph says that the Board "may" adopt rules providing for the acceptance of an accreditation organization, it does not express a clear legislative intent for a discretionary act to completely eliminate the mandated one. If the legislature had intended to allow the Board to avoid the Legislature's command to make such a rule, by providing for acceptance of an accreditation organization,[2] it surely knew how to do so. See § 468.211(4), Fla. Stat. ("The board may, by rule, adopt the use of a national examination in lieu of part or all of the examination required by this section."); see also Reynolds v. State, 842 So.2d 46 (Fla.2002) (interpreting legislative intent by comparison of wording of other statutes which have the meaning a party is asserting). This court is not at liberty to re-write the legislative enactment by adding the words "in lieu of" that are simply not there. See Reynolds, 842 So.2d at 49 n. 2. Therefore, this court holds that section 471.013(1)(a) requires that the Board promulgate rules to review schools and courses of study and that the adoption of rules providing for the acceptance of the approval and accreditation of schools and courses of study by a nationally accepted accreditation organization does not relieve the Board of the duty to adopt the required rules.
If the Board is of the opinion that the interests of the citizens of this state would best be served by allowing only graduates of ABET accredited schools to become engineers, it can seek a legislative amendment that creates such a requirement. As precedent on the admission to the practice of law makes clear, an accreditation requirement *581 is not an abdication of supervisory responsibility over admissions to a profession; nor is it the unlawful delegation of authority to a private body. See Fla. Bd. of Bar Exam'rs re Barry Univ. Sch. of Law, 821 So.2d 1050 (Fla.2002); see also State ex rel. Kaplan v. Dee, 77 So.2d 768 (Fla.1955) (veterinary medicine). However, the legislature did not include such a requirement in the statute in question, and, therefore, the Board's creation of such a requirement exceeds the legislature's statutory delegation of authority. See Dep't of Prof'l Regulation v. Sherman Coll. of Straight Chiropractic, 682 So.2d 559, 561 (Fla. 1st DCA 1995).
Gaudet also argues that rule G615-20.0015 is an unconstitutional denial of equal protection because it purports to deny Board review of the curriculum and schools of applicants who graduated from non-ABET accredited schools in this country, while providing applicants from foreign countries the opportunity for that review. But "a court will not decide constitutional questions if an issue can be determined on any other grounds." Mulligan v. City of Hollywood 871 So.2d 249, 255 (Fla. 4th DCA 2003) (citing State v. Tsavaris, 394 So.2d 418, 421 (Fla.1981), receded from on other grounds by Dean v. State, 478 So.2d 38 (Fla.1985); Wooten v. State, 332 So.2d 15 (Fla.1976); Singletary v. State, 322 So.2d 551 (Fla.1975); Jones v. City of Sarasota, 89 So.2d 346 (Fla.1956); and State v. Efthimiadis, 690 So.2d 1320, 1322 (Fla. 4th DCA 1997) (fundamental maxim of judicial restraint that courts should not decide constitutional issues unnecessarily)). Therefore, based on the reversal and remand on the previous issue, this court declines to address the constitutional issue at this time.
Accordingly, the Final Order under review is REVERSED and REMANDED with instructions to correct the scrivener's error as to Gaudet's state and date of licensure and reconsider his application under section 471.015(3)(a) & (b), Florida Statutes, again, after it promulgates the rules mandated by section 471.013(1)(a), Florida Statutes.
FARMER, C.J., and GUNTHER, J., concur.
NOTES
[1] See PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988), and Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 847 (Fla. 1st DCA 2002).
[2] A review of the many licensing statutes in the state revealed only one other statute with a rule-making requirement and the optional approval of an accreditation organization written like the one in question. See § 472.013(4), Fla. Stat. (land surveying and mapping). Others make it clear that there are two approval options, one by accreditation and one by approval by a board, like that for architecture and interior design. See § 481.209, Fla. Stat.