937 So.2d 652 (2006)
THE FLORIDA BAR, Complainant,
v.
Mark Stephen GOLD, Respondent.
No. SC04-1661.
Supreme Court of Florida.
August 31, 2006.
*653 Don L. Horn, Chair, Standing Committee on Advertising, Tavares, FL, John F. Harkness, Jr., Executive Director, Kenneth Lawrence Marvin, Staff Counsel, Tallahassee, FL, William Mulligan, Bar Counsel, Miami, FL, M. Hope Keating and Barry Richard of Greenberg Traurig, P.A., Tallahassee, FL, for Complainant, The Florida Bar.
Alan J. Kluger, Francesca Russo-Di Staulo, Andrew P. Gold, and Gregg Reed of Greenberg, Kluger, Peretz, Kaplan and Berlin, P.L., Miami, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Mark Stephen Gold. We have jurisdiction. See art. V, § 15, Fla. Const. We accept the referee's findings and recommendations in part and reject them in part. Neither party challenges the referee's summary disposition on the claim under Rule Regulating the Florida Bar 4-7.3(b), and we approve the referee's determination on this claim. Likewise, neither party challenges the referee's findings of fact or recommendations as to guilt on the claim under Rule Regulating the Florida Bar 4-7.7(a), and we approve these findings and recommendations. However, for the reasons expressed below, we approve the summary disposition on the claim under Rule Regulating the Florida Bar 4-7.4(b)(2)(K), but not for the reasons assigned by the referee. Finally, for the reasons expressed below, we disapprove the referee's findings and conclusions as to the claims under Rules Regulating the Florida Bar 4-7.2(b)(1)(B), 4-7.4(b)(1)(E), *654 and 4-7.2(b)(3) and remand to the referee for further proceedings.

Procedural Background
The charges filed against Gold relate to his mailing of brochures soliciting business for his legal practice from persons charged with traffic and DUI offenses. The Florida Bar charged Gold with violating Rules Regulating the Florida Bar 4-7.2(b)(1)(B) (prohibiting false, misleading, deceptive, or unfair communication about a lawyer or a lawyer's services, including any reference to past successes or results obtained or statements likely to create an unjustified expectation about results the lawyer can achieve); 4-7.4(b)(1)(E) (prohibiting written communications to a prospective client for the purpose of obtaining professional employment if the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or which is improper under subdivision (b)(1) of rule 4-7.2); 4-7.4(b)(2)(K) (prohibiting written communication seeking employment by a specific prospective client in a specific matter which reveals the nature of the client's legal problem on the outside of the communication); 4-7.2(b)(3) (prohibiting statements describing or characterizing the quality of the lawyer's services unless furnished to a prospective client at that person's request or to existing clients); 4-7.3(b) (requiring certain disclosure statements regarding the lawyer's background, training, and experience); and 4-7.7(a) (requiring payment of filing fees to the Standing Committee on Advertising for review of advertisements).
Prior to a final hearing, the referee granted partial summary relief in Gold's favor on all but the rule 4-7.7(a) claim. After a final hearing was held on that claim, the referee filed a report in which the referee adopted the earlier order granting summary relief to Gold and, in addition, the referee further found Gold had not violated rule 4-7.7(a).
The Bar petitions this Court for review of the referee's grant of judgment to Gold on the claims alleging violations of rules 4-7.2(b)(1)(B), 4-7.4(b)(1)(E), 4-7.4(b)(2)(K), and 4-7.2(b)(3).

Factual Background
Gold's law firm is named The Ticket Clinic. Gold specializes in the defense of traffic and DUI charges. To secure clients, he obtains the names and addresses of persons who have been ticketed for various traffic offenses or charged with driving under the influence (DUI) from public records maintained by clerks of court in the area. He then mails brochures to these persons to solicit their legal business. There is no dispute as to the contents of the brochures. The outside of the brochure contains the addressee's name and address; the name of Gold's firm, The Ticket Clinic, which appears on a diamond shape resembling the outline of a traffic sign with the drawing of a roadway disappearing into the distance; a drawing of a stop sign; and the words "Don't Just Roll Over Fight Back."
The Bar alleges the outside of Gold's brochure expressly reveals the nature of the recipient's specific legal problems, in violation of rule 4-7.4(b)(2)(K). That rule provides: "A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem."
The inside of the brochure consists of a few paragraphs of introductory text and a copy of three newspaper articles discussing Gold and his firm and his practice in defense of traffic and DUI cases. Two of the articles appear to have been published in The Miami Herald and the third appears to have been published in the Fort *655 Lauderdale Sun-Sentinel. None of the articles has a date of publication. However, two of the articles refer to Gold as a "32-year-old." As Gold was forty-nine on June 22, 2005, the date the Report of Referee was filed in this Court, it would appear that at least two of the articles were published seventeen years before.
The articles include several statements about Gold's services as a lawyer in a way that the Bar alleges (1) refers to past successes or results obtained or is otherwise likely to create an unjustified expectation about results Gold can achieve, in violation of rules 4-7.2(b)(1)(B)[1] and 4-7.4(b)(1)(E)[2]; or (2) describes or characterizes the quality of Gold's services, in violation of rule 4-7.2(b)(3).[3]

Analysis
As in ordinary civil proceedings, a referee has the authority to grant summary relief when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fla. Bar v. Greene, 926 So.2d 1195 (Fla. 2006); Fla. Bar v. Rapoport, 845 So.2d 874, 877 (Fla.2003). However, unlike a referee's factual findings, which are entitled to deference, a referee's order granting summary relief is reviewed de novo by this Court. Greene, 926 So.2d at 1200; Rapoport, 845 So.2d at 877.

The Outside of the Brochure
We initially address the issue of whether, based on the undisputed facts, the outside of the self-mailing brochure revealed the nature of the potential client's legal problem, in violation of rule 4-7.4(b)(2)(K). We hold that it does not. In the order granting Gold summary relief on the rule 4-7.4(b)(2)(K) claim, the referee concluded that application of the rule to Gold's conduct "would constitute an unconstitutional suppression of respondent's protected commercial speech." We disapprove the referee's report insofar as it purports to grant summary relief to Gold on First Amendment grounds on the rule 4-7.4(b)(2)(K) claim. However, we need not reach the First Amendment issue. When a case may be resolved on grounds other than constitutional grounds, the Court will ordinarily refrain from proceeding to decide the constitutional question. See, e.g., Sullivan v. Sapp, 866 So.2d 28 (Fla.2004).
The outside of the brochure contained the names and addresses of the recipients. The sender was identified as The Ticket Clinic, the name of Gold's law practice. In addition, there was a picture of a stop sign and a roadway, along with the words: "Don't Just Roll Over Fight Back." While it is possible that someone seeing the outside of Gold's brochure *656 might guess that the recipient was being targeted by a law firm, there is nothing that would lead inescapably to the conclusion that the recipient had indeed been charged with a particular offense. There is certainly nothing on the outside of the brochure to indicate the recipient had actually been charged with DUI. In fact, there was nothing to distinguish the outside of the brochure from numerous other unsolicited, seemingly random bulk mail advertisements which are mailed and delivered regularly in the hopes of gaining, by chance alone, some new customers or purchasers. Accordingly, the referee's report is approved insofar as it granted summary relief in favor of Gold on the rule 7.4(b)(2)(K) claim.

The Inside of the Advertisement
The Court disapproves the referee's order granting summary relief to Gold on the rule 4-7.2(b)(1)(B), 4-7.4(b)(1)(E), and 4-7.2(b)(3) claims and concludes the referee utilized the wrong standard of review with regard to these claims. With regard to the inside of the advertisement at issue here, the referee found that the articles themselves were not misleading, which triggered the referee's use of a heightened constitutional standard of review for restrictions on the dissemination of truthful information. The referee found that the Bar failed to prove that it sought to suppress the dissemination of the "independently written newspaper articles" in order to advance a substantial government interest in a way no more extensive than necessary. However, it is unclear whether the referee was analyzing the articles as "independently written newspaper articles" or as the content of a lawyer's advertisement being used years after the articles were published.
This Court has previously concluded there is no broad constitutional prohibition against the regulation of lawyer advertising. See, e.g., Fla. Bar v. Pape, 918 So.2d 240 (Fla.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1632, 164 L.Ed.2d 335 (2006). Further, in 2000, the United States Court of Appeals for the Eleventh Circuit reaffirmed the well-established principle that a state may ban false, deceptive, or misleading commercial speech without infringing on First Amendment rights. Mason v. Fla. Bar, 208 F.3d 952, 955 (11th Cir.2000). In addition, a state may restrict commercial speech that is not false, deceptive, or misleading if the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest. Id. In Mason, the Eleventh Circuit further held The Florida Bar has a substantial interest in ensuring that attorney advertisements are not misleading and in ensuring and encouraging the flow of helpful, relevant information about attorneys. Id. at 956. All of the rules involved in this case fall within that category of regulation.
Rules 4-7.2(b)(1)(B) and 4-7.2(b)(3) define or describe statements referring to past successes or results obtained, statements likely to create an unjustified expectation about the results the lawyer can achieve, and statements describing or characterizing the quality of the lawyer's services as inherently false, misleading, deceptive, or unfair. Because the referee concluded that the contents of the brochures were constitutionally protected, the referee's order does not address whether the statements contained in Gold's advertisement refer to past successes or results obtained, are likely to create an unjustified expectation about the results the lawyer can achieve, or describe or characterize the quality of Gold's services. We conclude that these are factual issues which *657 must be resolved and which preclude the grant of summary resolution.
It is true that this Court has previously held that the initial publication of independently authored news articles does not violate the rules. See State ex rel. Fla. Bar v. Nichols, 151 So.2d 257, 259 (Fla. 1963). We do not disturb that holding here. However, we have never held that republication or circulation of news articles in direct mail solicitations completely insulates a lawyer from prosecution for ethical misconduct under the Bar's advertising rules. In this instance, for example, it is apparent that by taking the articles and including them in a direct mail solicitation for legal representation, Gold adopted the articles' contents and made them into advertising copy.[4] In this way, the articles' contents became subject to the strictures of the Bar's advertising rules.
This result is made more compelling in this case by the fact that at least two of the articles at issue were published seventeen years before Gold used them in his advertisement and, yet, were undated, such that the recipients of the advertisements would be unable to properly assess their value when choosing legal representation. These circumstances also raise an issue as to whether the dated information provided in these articles, even if otherwise proper, would be helpful or relevant. For example, it raises the issue as to whether the information contained in them, which may have been true at the time the articles were first published as news stories, is still true after all these years. All of these facts and circumstances should be taken into consideration by the referee in determining whether the contents of the advertisement violated rules 4-7.2(b)(1)(B), 4-7.2(b)(3), and 4-7.4(b)(1)(E).
We do not offer an opinion concerning these issues or any remaining factual issues. Rather, we direct the referee to take a fresh look at this case in light of this opinion. If necessary, it is also permissible for the Bar to be allowed to amend its complaint prior to the formal hearing before the referee to more particularly identify the factual circumstances alleged by the Bar to give rise to the alleged rule violations. See Fla. Bar v. Batista, 846 So.2d 479 (Fla.2003) (holding attorneys must be given reasonable notice of the charges they face before the referee's hearing on those charges).

CONCLUSION
Accordingly, the Court approves the referee's order granting summary disposition to Gold on the rule 4-7.3(b) claim and the referee's findings and conclusions regarding the alleged violations of rule 4-7.7(a). The Court further approves the referee's order granting summary disposition to Gold on the rule 4-7.4(b)(2)(K) claim, but not for the reason assigned by the referee. Thus, we approve of the recommendation that Gold be found not in violation of rules 4-7.3(b), 4-7.7(a), and 4-7.4(b)(2)(K), and that no discipline is imposed as to those charges. The Court disapproves the referee's report recommending summary disposition on the rule 4-7.2(b)(1)(B), 4-7.4(b)(1)(E), and 4-7.2(b)(3) claims and remands these claims to the referee for further proceedings, consistent with this opinion.
It is so ordered.
*658 LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Rule 4-7.2(b)(1)(B) prohibits a lawyer from sending a false, misleading, deceptive, or unfair communication about the lawyer or his services and provides that a communication violates the rule, i.e., it is false, misleading, deceptive, or unfair, if it "contains any reference to past successes or results obtained or is otherwise likely to create an unjustified expectation about results the lawyer can achieve except as allowed in the rule regulating information about a lawyer's services provided upon request."
[2] Rule 4-7.4(b)(1)(E) prohibits a lawyer from sending a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if "the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim, or is improper under subdivision (b)(1) of rule 4-7.2."
[3] Rule 4-7.2(b)(3) prohibits a lawyer from making "statements describing or characterizing the quality of the lawyer's services in advertisements and written communications" unless the information is being sent to a prospective client at that person's request or to an existing client.
[4] To his credit, counsel for Gold conceded at oral argument that a lawyer cannot use news articles as an "end run" around the Bar's advertising rules and that the content of an article, when used as an advertisement, is subject to these restraints.