945 So.2d 1130 (2006)
Inquiry Concerning A Judge, re Gregory P. HOLDER.
No. SC03-1171.
Supreme Court of Florida.
December 7, 2006.
Charles P. Pillans, III of Bedell, Dittmar, DeVault, Pillans and Coxe, P.A., Jacksonville, Florida, and Marvin E. Barkin, *1131 Interim General Counsel, of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., Tampa, FL, for Florida Judicial Qualifications Commission, Petitioner.
David B. Weinstein and Kimberly S. Mello of Greenberg Traurig, P.A., Tampa, Florida, Juan P. Morillo and Steven T. Cottreau of Sidley Austin, LLP, Washington, D.C., for Judge Holder, Respondent.
PER CURIAM.
We have for review the motion of Hillsborough County Circuit Judge Gregory P. Holder for attorney's fees incurred in his defense of charges before the Florida Judicial Qualifications Commission. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons detailed below, we deny the motion because the Florida Constitution does not grant this Court the authority to award attorney's fees in JQC proceedings.

FACTS AND PROCEDURAL HISTORY
The instant matter arises out of proceedings before the Florida Judicial Qualifications Commission ("JQC") relating to possible violations of the Code of Judicial Conduct by Judge Holder. In 1994 and 1996, respectively, Judge Holder was elected to the Hillsborough County Court and the Thirteenth Judicial Circuit Court. Prior to his election to judicial office, Judge Holder had a distinguished career in the United States Air Force. After he assumed office, Judge Holder continued to serve as an officer in the United States Air Force Reserve. In 1997, Judge Holder enrolled in the United States Air Force Air War College, the completion of which was a requirement for his promotion to the rank of colonel. In early 1998, Judge Holder submitted a paper to the Air War College on the Anglo-American Combined Bomber Offensive in Europe During World War II. Judge Holder subsequently graduated from the Air War College and was promoted to the rank of colonel.
In 2002, Assistant United States Attorney Jeffrey Del Fuoco, who served in the United States Army Reserve, claimed that an unmarked manila envelope was placed under the door of his office at the Army Reserve Headquarters in St. Petersburg. The envelope allegedly contained copies of two papers submitted to the Air War College with an anonymous note indicating that action should be taken on the matter.[1] One paper, uncontestedly on the same topic as the paper Judge Holder submitted to the Air War College in 1998, was submitted to the Air War College by E. David Hoard in 1996 ("the Hoard paper"). The other paper was allegedly the paper Judge Holder submitted to the Air War College in 1998 ("the alleged Holder paper"). This second paper contained significant amounts of material taken verbatim from the Hoard paper. In December 2002, the United States Attorney's Office provided these two papers to the JQC. In July of 2003, the JQC filed a notice of formal charges against Judge Holder alleging that his submission of a plagiarized paper to the Air War College constituted both a violation of the Code of Judicial Conduct and a violation of federal law because Judge Holder's written certification that the paper was his own work constituted a false statement made to the federal government.
Throughout the JQC investigation, discovery, and hearing process, Judge Holder maintained that the paper containing the plagiarized material from the Hoard paper was not the paper he submitted to the Air *1132 War College but was, instead, a fabricated document made to look like his actual paper. Judge Holder hypothesized that this allegedly fabricated paper was created in an effort to discredit him in his role as a whistleblower in a Hillsborough County Courthouse scandal that was then being investigated. In June of 2005, the case was tried for six days before the JQC hearing panel. On June 22, 2005, the JQC hearing panel voted unanimously to dismiss the charges. On the same day, the JQC also entered an order recommending that this Court award costs to Judge Holder as the prevailing party in the instant matter. Judge Holder expended significant resources in attempting to defend the charges brought by the JQC. On July 25, 2005, Judge Holder filed a motion in this Court for attorney's fees, which the JQC challenged. This review followed.

ANALYSIS
Judge Holder asserts that he is entitled to an award of attorney's fees under the common law doctrine affirmed by this Court in Thornber v. City of Fort Walton Beach, 568 So.2d 914 (Fla.1990). In Thornber, this Court stated:
For public officials to be entitled to representation at public expense, the litigation must (1) arise out of or in connection with the performance of their official duties and (2) serve a public purpose.
Id. at 917 (citing Chavez v. City of Tampa, 560 So.2d 1214 (Fla. 2d DCA 1990)). The Court explained the origins and purpose of the doctrine, stating:
Florida courts have long recognized that public officials are entitled to legal representation at public expense to defend themselves against litigation arising from the performance of their official duties while serving a public purpose. The purpose of this common law rule is to avoid the chilling effect that a denial of representation might have on public officials in performing their duties properly and diligently.
Thornber, 568 So.2d at 916-17 (citations omitted). The JQC contends that the proceedings below do not meet the first prong of the test announced in Thornber because the formal charges against Judge Holder relate to extrajudicial conduct that allegedly occurred while he was attending a program to advance his military career. However, we do not address the arguments under Thornber further because the resolution of this matter does not hinge on the Thornber test.
In fact, the Thornber doctrine has never been applied to the attorney's fees incurred by a judge in defending charges filed by the JQC. Although Judge Holder correctly points out that a 1993 opinion of the Attorney General of Florida states that the Thornber doctrine applies to attorney's fees in JQC proceedings, see Op. Att'y Gen. Fla. 93-21 (1993), opinions of the Attorney General are not binding upon this Court. See Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So.2d 459, 473 (Fla.2005) (citing State v. Family Bank of Hallandale, 623 So.2d 474, 478 (Fla.1993)); In re Advisory Opinion to the Governor, 600 So.2d 460, 463 n. 3 (Fla.1992) (disapproving an opinion of the Attorney General). Upon consideration of the matter, we disagree with the opinion of the Attorney General and conclude that the Thornber doctrine does not apply to JQC proceedings because of an implicit prohibition in the Florida Constitution.
Article V, section 12(c) of the Florida Constitution vests this Court with the power to review the findings and recommendations of a JQC hearing panel, and to "accept, reject, or modify in whole or in part the findings, conclusions, and recommendations *1133 of the commission." Art. V, § 12(c)(1), Fla. Const. The constitution also specifically states that "[t]he supreme court may award costs to the prevailing party" in JQC proceedings. Id. § 12(c)(2) (emphasis supplied). Notably, the constitution is silent with regard to the authority of this Court to award attorney's fees in JQC proceedings. Further, in In re Judge Hapner, 737 So.2d 1075 (Fla.1999), we held that attorney's fees in JQC proceedings could not be awarded as costs. See id. at 1077. We conclude that the express constitutional vesting of authority in this Court to grant costs in JQC proceedings implies that this Court is without similar authority to grant attorney's fees in JQC proceedings.
We have considered the principle of judicial restraint urged in the concurring-in-result-only opinion, but find it inapplicable. Of course, we have long subscribed to a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds. See, e.g., State v. Mozo, 655 So.2d 1115, 1117 (Fla.1995) ("[W]e adhere to the settled principle of constitutional law that courts should endeavor to implement the legislative intent of statutes and avoid constitutional issues."); State v. Covington, 392 So.2d 1321, 1322-23 (Fla.1981) ("It is a `settled principle of constitutional law that courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds.'") (quoting Singletary v. State, 322 So.2d 551, 552 (Fla.1975)); Franklin County v. State, 24 Fla. 55, 3 So. 471, 472 (1888) ("[A] court will not, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary. . . . ").
We do not intend to violate that principle here. We simply believe it does not apply. We have generally applied this principle when called upon to decide the constitutionality of a specific statute or specific conduct. See, e.g., Fla. Bar v. Gold, 937 So.2d 652, 655 (Fla.2006) (declining to determine whether application of the Rules Regulating the Florida Bar would unconstitutionally suppress free speech where the issue could be resolved on other grounds); Mozo, 655 So.2d at 1117 (declining to address whether interception of cordless phone conversations violates the constitutional rights of privacy where the case could be decided on statutory grounds); Floridians United for Safe Energy, Inc. v. Pub. Serv. Comm'n, 475 So.2d 241, 242 (Fla.1985) (declining to determine whether a session law violated the single subject requirement where the case could be decided on other grounds); Covington, 392 So.2d at 1322-23 (declining to find a statute unconstitutionally vague where the order under review could be affirmed on other grounds).
Here, we do not decide the constitutionality of a particular statute or action, but simply note that the Florida Constitution does not grant us the authority to provide the relief requested. In that sense, our decision is similar to countless other cases where we have determined that the Florida Constitution does not give this Court authority to act, such as our regular determinations that we lack jurisdiction to hear a case. See, e.g., Jackson v. State, 926 So.2d 1262, 1265 (Fla.) ("This Court has long recognized that it lacks jurisdiction over unelaborated per curiam decisions in the context of discretionary review jurisdiction."), cert. denied, ___ U.S. ___, 127 S.Ct. 194, 166 L.Ed.2d 159 (2006); Mystan Marine, Inc. v. Harrington, 339 So.2d 200, 201 (Fla.1976) ("Time and again we have noted the limitations on *1134 our review and we have refused to become a court of select errors.") (footnote omitted). In such cases, we do not avoid the jurisdictional issue and address the merits of the case on the theory that determining jurisdiction would violate the principle of avoiding a constitutional question when possible. To the contrary, we recognize that our jurisdiction, which is outlined in the Florida Constitution, is a threshold matter that must be addressed before we can decide the merits of a case. See, e.g., Jackson, 926 So.2d at 1265 ("[A]rticle V, section 3(b)(1) does not authorize this Court to review unelaborated per curiam decisions issued by the district court."); Gandy v. State, 846 So.2d 1141, 1143 (Fla. 2003) ("The jurisdiction of this Court extends only to the narrow class of cases enumerated in Article V, Section 3(b) of the Florida Constitution.") (quoting Mystan Marine, Inc., 339 So.2d at 201). Similarly, in this case we recognize that the Florida Constitution does not grant this Court the authority to award attorney's fees to a respondent in a JQC proceeding. Such an acknowledgement does not violate the principle that we should avoid constitutional questions when possible; rather, it acknowledges that before this Court can take action, the Florida Constitution must give us the power to do so. This principle recognizes that our authority is not boundless; it is circumscribed by the language of the Florida Constitution. Nothing can be more consistent with the concept of judicial restraint.
Therefore, we deny Judge Holder's motion for attorney's fees because we are without constitutional authority to award attorney's fees in JQC proceedings.
It is so ordered.
ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., concurs in result only with an opinion.
WELLS, J., recused.
LEWIS, C.J., concurring in result only.
I concur in result only based on my belief that the majority opinion violates the fundamental maxim of judicial restraint which dictates that "[w]hen a case may be resolved on grounds other than constitutional grounds, the Court will ordinarily refrain from proceeding to decide the constitutional question." Fla. Bar v. Gold, 937 So.2d 652, 655 (Fla.2006); see also Gaudet v. Fla. Bd. of Prof'l Eng'rs, 900 So.2d 574, 581 (Fla. 4th DCA 2004). The United States Supreme Court has endorsed and utilized this maxim as well, concluding that prior to reaching any constitutional questions, courts must first consider nonconstitutional grounds for a decision. See Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); see also Amer. Foreign Serv. Ass'n v. Garfinkel, 490 U.S. 153, 161, 109 S.Ct. 1693, 104 L.Ed.2d 139 (1989) (remanding case to federal district court and noting that "the District Court should not pronounce upon the relative constitutional authority of Congress and the Executive Branch unless it finds it is imperative to do so").
To the extent that the majority contends that this maxim does not apply to the circumstances governing the instant case, I disagree. While judicial restraint may be applied in cases in which a court chooses to avoid addressing the constitutionality of a statute or conduct by resolving the dispute on nonconstitutional grounds, this longstanding maxim has never been interpreted to apply only in such cases, and the majority provides no authority to support such principle. Rather, the maxim broadly encompasses any issue that touches upon rights or powers under the Florida or the United States Constitutions.
*1135 Indeed, contrary to the majority view, this Court has applied the maxim of judicial restraint to cases that do not involve a constitutional challenge to a statute or conduct by a government official. In Metropolitan Dade County Transit Authority v. State Department of Highway Safety & Motor Vehicles, 283 So.2d 99 (Fla.1973), at issue was whether county-owned buses should be taxed under the Florida Statutes as "Local Buses" or "Exempt or Official" vehicles. See id. at 100. The trial court entered judgment in favor of the Department. See id. On review before this Court, we noted:
In reaching his decisions, the trial judge discussed Fla. Const. art. VII, § 1(b) and (c) in stating that real property and tangible personal property including motor vehicles are exempt from state ad valorem taxation. By explaining these constitutional provisions, the judge construed language in our constitution giving us appeal jurisdiction.
Id. However, we nonetheless declined to resolve the case under constitutional principles and, instead, followed the maxim of judicial restraint:
[W]e recognize the well-settled rule that precludes us from deciding constitutional questions whenever the case can be disposed of on a non-constitutional ground. In re Estate of Sale, 227 So.2d 199, 201 (Fla.1969). This principle applies here because our decision will not require an interpretation or an explanation of constitutional language; it turns on matters of statutory construction.
Id. at 101.
In another case, involving noncriminal infractions of the Florida Uniform Traffic Code (State v. Carr, 373 So.2d 657 (Fla. 1979)), the trial court vacated judgments, holding in part that "article V, section 20(c)(4), Florida Constitution, does not confer jurisdiction on the county court to hear noncriminal traffic infractions." Id. at 657. On review of the county court order here, this Court concluded that jurisdiction existed because the lower court "construed provisions of our state constitution." Id. However, we reversed the order as moot on the basis that the defendants' motions to vacate were untimely filed. See id. at 658-59. In doing so, this Court relied on Transit Authority for the principle that it would not "reach the issue of either the jurisdiction of county courts to hear noncriminal traffic infractions or whether it is a violation of separation of powers for a judicial officer to sit as an official in chapter 318 proceedings." Id. at 659.
These cases demonstrate that the Court simply has not applied the maxim of judicial restraint exclusively to constitutional challenges of statutes or conduct, nor established such concept as the law of Florida. Rather, we have utilized this principle to avoid addressing constitutional issues such as taxation and the jurisdiction of county court judges. Accordingly, judicial restraint is equally applicable to the instant proceeding, and I do not subscribe to the majority's attempt to pigeonhole the applicability of this maxim where it has not previously been so limited. The majority has unnecessarily limited that restraint today.
The majority's analogy of the instant situation to jurisdictional determinations is unavailing because it is undisputed that this Court has jurisdiction to review JQC proceedings. See art V, § 12(c), Fla. Const. Having established our jurisdiction, the principle of judicial restraint then applies to ensure that the Court not resolve an issue on a constitutional basis unless "it [is] imperative to do so." Garfinkel, 490 U.S. at 161, 109 S.Ct. 1693. Because there is a nonconstitutional basis upon which to resolve the attorney's fees *1136 issue presented by the instant case (i.e., by application of the Thornber test), the maxim of judicial restraint does indeed apply.
Applying this maxim to the instant matter, I would conclude that the issue of our constitutional authority to grant attorney's fees in JQC proceedings need not be considered because the proceedings in the instant matter fail to meet the initial requirements of the Thornber doctrine. The first prong of the test announced in Thornber dictates that "[f]or public officials to be entitled to representation at public expense, the litigation must (1) arise out of or in connection with the performance of their official duties." Thornber, 568 So.2d at 917. The JQC proceedings in the instant matter do not satisfy this requirement because the allegations in the formal charges related to Judge Holder's submission of an allegedly plagiarized paper to the United States Air Force Air War College. Judge Holder enrolled in the Air War College for the purposes of advancing his military career. Neither Judge Holder's attendance at nor alleged submission of a plagiarized paper to the Air War College are connected with Judge Holder's official judicial duties. This is not a case where the charges arose from a judge's intemperate behavior with regard to the parties involved in a case, nor is this an instance where the charges addressed a lack of judicial impartiality in deciding a matter. These situations are examples of conduct that may be directly related to the official duties of a judge that may become the subject of formal charges before the JQC.
Therefore, the JQC proceedings in the instant matter do not satisfy the initial test announced in Thornber, and Judge Holder's motion for attorney's fees should be denied on that ground. This resolution would avoid the constitutional issue addressed by the majority opinion, and would respect the long-standing maxim of judicial restraint, which is clearly applicable to the subject matter of the instant proceeding.
NOTES
[1] By the time the two papers were handed over to the JQC, both the manila envelope and the anonymous note had mysteriously vanished.