OSTERHAUS, J.,
concurring in result.
I concur with part I of the majority opinion and in the result, but think this case should be resolved entirely as a matter of statutory construction, which is how the parties presented it and the trial court resolved it below. Reversal is warranted for the simple reason that § 790.115(2)(a)3 allows “school districts” to waive the exception for storing a firearm in a vehicle, but not universities like UNF. On this single point of statutory construction the whole court agrees and I think this point is dispositive.[32]
I do not think it is necessary, however, for the majority to embark on an expansive constitutional analysis of the legislature’s and universities’ comparative authority to regulate firearms. This is a simple statutory case that does not require plowing new constitutional ground. Even though the dissenting opinion invites a sweeping constitutional debate, the best response to it is explaining how the dissent’s constitutional views are irrelevant to resolving this particular case, as discussed below. Far from an endorsement, (as the majority contends), a modest, nonconstitu-tional response to the dissent is consistent with the custom that courts should refrain from making unnecessary constitutional rulings. See, e.g., In re Holder, 945 So.2d 1130, 1133 (Fla.2006) (noting that “we have long subscribed to a principle of judicial restraint by .which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds”).
The constitutional issue addressed by the dissent did not originate with the parties and is immaterial to resolving this case. After the parties had litigated a basic statutory issue in the trial court below and then filed narrow, statute-focused briefs in this court, the panel injected the following constitutional question:
Does a state university have independent authority under Article IX, section 7 of the Florida Constitution .:. to adopt a noncriminal policy or regulation concerning the possession of firearms on campus, irrespective of any right it may have under section 790.115(2)(a)3., Florida Statutes, to waive the exception that would allow a student to possess a firearm in a vehicle?
(Emphasis added). The parties had not addressed this issue before, but acceded to the panel’s request for responses. UNF answered the panel’s question affirmatively at oral argument and in a supplemental filing. And on this basis the dissent would now affirm UNF’s policy.
But the question put to the parties and the dissent’s tipsy coachman analysis do not fit this case because UNF’s policy is *992 neither non-statutory, nor noncriminal as assumed by the question. First, UNF’s policy is entirely bound up with § 790.115(2)(a)3. Whereas the dissent characterizes UNF’s policy as being adopted “pursuant to authority granted to the university by the Board of Governors under Article IX, section 7,” UNF’s policy says different. Over and over again, UNF’s policy invokes § 790.115 and identifies the law as the reason for its existence:
I. OBJECTIVE & PURPOSE
To clarify the University of North Florida’s weapons policy while remaining consistent with Florida law.
II. STATEMENT OF POLICY
University of North Florida is a “school” based on the established definitions in Section 790.115, Florida Statutes. Except as specifically provided in Section 790.06(12) (a) (13), Florida Statutes, students must not have any type of weapon or destructive device as defined in Section 790.001, Florida Statutes, in their possession and cannot store such weapons or destructive devices in their vehicle while on any University property or University-controlled property. * * *
Section 790.115(2) (a), Florida Statutes, prohibits possessing weapons or firearms on school property. Although s. 790.115(2) (a)3, Florida Statutes, provides that a person may carry a firearm in a vehicle pursuant to s.790.25(5), it provides that schools may provide written and published policies waiving the exception. In accordance with the foregoing, the University of North Florida specifically waives the exception provided in Section 790.115(2) (a) (3), Florida Statutes, meaning that UNF students must not have any type of defined weapon in their possession and cannot store a weapon in their vehicle while on any University or University-controlled property....
Weapons and Destructive Devices on Campus, Policy 14.0080P, Univ. N. Fla. (Sept. 30, 2011) (emphasis added). Not only is UNF’s policy anchored in § 790.115, but it states an “[o]bjective & [p]urpose” of “remaining consistent with Florida law.”[33] In consequence, the panel’s question of whether a university could regulate firearms constitutionally and “irrespective of ... § 790.115(2)(a)3” (as well as the answer to this question) lends no help towards resolving the challenge here involving UNF’s policy that explicitly exists to exercise the statutory waiver within § 790.115(2)(a)3, incorporating statutory definitions and statutory penalties.
Tellingly, UNF’s own arguments do not ignore the link between its policy and § 790.115(2)(a)3, or shrink from its intention to enforce this particular statute against students. Swearing off constitutional arguments, UNF defended its policy squarely on statutory grounds. It told the trial court, for instance, that:
[T]his is not a case under the ... United States Constitution or Florida Constitution .... It’s clear from legislation that the Florida legislature has announced an *993 intent to, within certain circumstances, provide for the citizens of Florida to bear arms. But we submit that there are exceptions and we’re before the Court on that exception.
UNF’s answer brief also emphasized its policy’s statutory basis:
[UNF] adopted this policy pursuant to the provisions of Florida Statute § 790.115(2)(a)3 as supported by Florida Statute § 790.251, as it is a “school” clearly within the definition of the word “school” as specifically defined in the precise statute at issue.
[[Image here]]
Distilled to its essence then, the issue before this Court is: is the University of North Florida a land owner/institution/school reasonably within the authority recognized by Florida Statutes to enact such written and published policies?
* * *
As will be demonstrated below, there are at least three statutes from the many firearms-related statutes in Florida that directly bear upon the decision of the trial court below and, as a result, those statutes must be considered in pari materia before this Court can determine whether UNF had the authority to bar guns from cars on its campus, or not.
[[Image here]]
The Appellants [note], correctly, that the Legislature has the power to, and has sometimes exercised that power to, preempt certain areas of law or regulation. [Citation omitted]. The regulation of firearms in the State of Florida is one of those areas in which the Legislature has stated that it does intend to preempt the field[.] ... The Appellees have no quarrel with this preemption concept[.]
Indeed, UNF’s brief conceded twice that it would lose this appeal if the Appellants’ interpretation of the statute prevailed:
It is certainly acknowledged by that, if no other statutes in Florida are read in conjunction with [§ 790.25(5)], Appellant Lainez would not be committing a crime if she kept her handgun securely encased in her car, anywhere in the state of Florida. Conceded.
[[Image here]]
UNF further readily acknowledges, that should this Court accept ... Appellants’ [statutory] contention ... then UNF [is] precluded from ... banning guns from student vehicles.
Furthermore, UNF’s brief acknowledged that the parties committed themselves to the statutory focus of this litigation:
[T]he issue was, by agreement of the parties, framed so as to present a clear legal issue to the trial court; and the parties have acknowledged and committed themselves to the presentation of this legal issue to this Court — was the trial court correct when it determined that UNF could preclude students from bringing firearms onto its property, even when the firearms were located in a private conveyance and locked in a secure container.
In sum, the first reason that the panel’s question and the dissent’s corresponding tipsy coachmen-based constitutional analysis are irrelevant is that they do not fit UNF’s situation here. They assume away the statutory scheme at the heart of the policy that UNF is enforcing against its students as if UNF were defending its own free-standing firearms regime. It isn’t. UNF’s policy exercised the statutory waiver within § 790.115(2)(a)3’s scheme and the question for this court is whether it could lawfully do so. The different question of whether UNF could adopt its own regulatory scheme independent of *994 § 790.115(2)(a)3 is immaterial to resolving the issue here of whether UNF can enforce this particular policy and statute against Ms. Lainez and other students.
The second problem with the panel’s question and the dissent’s tipsy coachman analysis is that it addresses only a noncriminal policy: “Does a state university have independent authority under Article IX, section 7 of the Florida Constitution ... to adopt a noncriminal policy!?]” (Emphasis added.) This question might be relevant if UNF’s policy provided only for run-of-the-mill academic consequences against violators, i.e., academic probation, suspensions, and the like. But it doesn’t. UNF’s policy, by waiving the statutory exception under § 790.115(2)(a)3, subjects students to serious criminal charges. See § 790.115(2)(c)l, Fla. Stat. (“A person who ... possesses any firearm in violation of this subsection commits a felony of the third degree!.]”). UNF’s Student Handbook (as attached to Appellant’s complaint) is completely upfront about this; it includes a reference to § 790.115 and warns that students “will be subject to arrest and/or discipline in accordance with Florida State Statute and the Student Conduct Code.” Furthermore, UNF’s brief minces no words. One of its headings makes clear that its policy “simply triggers] a crime already defined by the Legislature.” It goes on to defend what the panel’s question assumes away: that UNF can trigger § 790.115-based criminal penalties against students who violate its policy. Here, once again, I cannot see how even an affirmative answer to the panel’s constitutional question about a noncriminal policy matters to the analysis of UNF’s very different, felony-triggering policy. It simply makes no difference for purposes of deciding this case whether, constitutionally speaking, UNF could enforce some different policy that attaches only noncriminal penalties.[34]
The third problem with the panel’s question and the dissent’s analysis is that article IX, section 7 of the Florida Constitution, speaks only to the powers of the universities’ board of governors (BOG) (in paragraph (d)) and the powers of the individual university boards of trustees (in paragraph (c)). But as Judge Wetherell’s and Judge Swanson’s opinions note, the policy at issue in this case was not adopted by the BOG or by a board of trustees; it was adopted unilaterally by UNF’s administrative staff. Thus, even if the dissent is correct that the BOG has constitutional authority to adopt freestanding policies superseding state laws, that principle would not apply here because UNF’s policy was not adopted by the BOG or pursuant to any specific delegation of authority to UNF’s staff. Accordingly, unlike the majority opinion, I see no reason to address the merits of the dissent’s argument about the scope of the BOG’s constitutional authority under article IX, section 7, because that issue is simply not implicated here.[35]
*995 Finally, it bears mentioning that if UNF’s policy were affirmed constitutionally, but not statutorily, as the dissent would have it, the policy really would not survive at all. What I mean is, once stripped of its law-based impetus, its repeated references to various laws, and its requirement that it remain consistent with law, there would be virtually nothing left of UNF Policy 14.0080P. Read it again and see; the text of UNF’s policy is so intertwined with § 790.115 that it would be eviscerated and require redrafting. And then, presumably, its redrafting effort would have to resolve how not to “conflict with provisions contained in laws” (as required by UNF Policy 1.0010P, see supra note 2), including § 790.115(2)(a)3’s express endorsement of the right of adults to store a securely encased firearm in a vehicle.
In conclusion, the dissent’s tipsy coachmen analysis drawn from the panel’s ill-fitting constitutional question gives a thoroughly insufficient rationale for affirming the particular policy adopted by UNF’s administrative staff. UNF is simply not enforcing the sort of policy that the panel asked the parties to address and that the dissent would have us affirm. And, by extension, the majority should have avoided a broad, constitutional rebuttal to the dissent’s views, because that opinion is deficient for these other nonconstitutional reasons.

. It bears repeating that this case involves only a narrow aspect of Florida’s firearms laws. Whereas Florida law widely bans the possession of firearms at schools, an exception allows adults to store a firearm inside a vehicle at a school if it is securely encased or otherwise not readily accessible for immediate use. § 790.115(2)(a)3, Fla. Stat. Only "school districts” may waive this exception. Id.

. In fact, UNF adopts all of its policies — as it did with the policy here — in subordination to Florida's laws. Policy 1.001 OP sets forth "Policy Creation and Development” parameters by requiring that: "Policies should [not] conflict with provisions contained in laws " and "[w]hen a subsequently promulgated law ... conflicts with an existing University policy, such law ... shall take precedence over the policy." Policy Creation and Development Process, Policy 1.0010P, Univ. N. Fla. (June 1, 2001) (emphasis added), available at http://www.unf.edu/president/policies_ regulations/01-General/1_001 OP.aspx. Cf. Grapeland Heights Civic Ass’n v. City of Miami, 267 So.2d 321, 324 (Fla. 1972) (interpreting the term "law” to mean an enactment by the legislature).

. Furthermore, in the absence of a policy in this record attaching merely academic, noncriminal penalties, the tipsy coachmen doctrine is unavailable to the dissent as a means to affirm because: "[t]he tipsy coachman doctrine allows appellate courts to consider grounds for affirmance if the record supports doing so; it does not compel them to overlook deficient records and blaze new trails that even the tipsiest of coachmen could not have traversed.” Powell v. State, 120 So.3d 577, 591 (Fla. 1st DCA 2013), on reh'g (Aug. 1, 2013) (emphasis added).

. The same is true for the dissent’s suggestion that § 1001.706(7)(b) provides statutory authority for UNF’s policy. That provision is not an independent grant of authority to university staff; it simply directs the BOG to establish guidelines for boards of trustees regarding the use of university property, including "restrictions on ... firearms ....” But UNF's policy is not a restriction imposed by *995 its board of trustees pursuant to guidelines established by the BOG.