NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


JAMES ANDERSON,

        Appellant,

v.

        Case No. 2D12-5969

CITY OF ST. PETE BEACH, a
municipal government of the State of
Florida, and BEVERLY GARNETT,
LORRAINE HUHN, MARVIN SHAVLAN,
JAMES PARENT, and MAYOR STEVE
McFARLIN, all in their official capacities
as the members of the St. Pete Beach
City Commission,

        Appellees.
_____

Opinion filed October 15, 2014.

Appeal from the Circuit Court for
Pinellas County; David A. Demers,
Judge.

Timothy W. Weber of Weber, Crabb &
Wein, P.A., St. Petersburg, and
Kenneth L. Weiss, Treasure Island,
for Appellant.

Susan H. Churuti and Michael S. Davis
of Bryant Miller Olive, P.A., Tampa,
and Elizabeth W. Neiberger of Bryant
Miller Olive, P.A., Tallahassee, for
Appellees.

Jonathan D. Kaney, Jr., and Jonathan
D. Kaney, III, of Kaney & Olivari, P.L.,
Ormond Beach, for Amicus Curiae First
Amendment Foundation, Inc.

KELLY, Judge.

James Anderson appeals from a final judgment finding section 163.32466, Florida Statutes (2011), constitutional. He argues the trial court erred in concluding that section 163.32466 was not a special law enacted without the notice required by article III, section 10 of the Florida Constitution. Additionally, Anderson asserts that the trial court erred in rejecting his challenge to the City of St. Pete Beach, Florida, Ordinance 2011-19 (June 28, 2011), an amendment to the appellee City's comprehensive plan based on the City's failure to publish notice in accordance with section 166.041, Florida Statutes (2011). Finally, Anderson argues that the trial court erred when it entered summary judgment in favor of the City; Commissioners Beverly Garnett, Lorraine Huhn, Marvin Shavlan, and James Parent; and Mayor Steve McFarlin on his claim that they violated section 286.011, Florida Statutes (2011), Florida's Government in the Sunshine Law, by discussing and orchestrating the passage of section 163.32466, amendments to the City's Charter, and an amendment to the City's comprehensive plan during a series of seven shade meetings. We conclude that Ordinance 2011-19 is void because the City did not comply with the notice requirements of section 166.041 when it passed the ordinance. We also conclude that the trial court erred when it entered summary judgment on Anderson's claim that the appellees violated the Sunshine Law.

- 2 -

Anderson's primary argument is that Ordinance 2011-19 is invalid because it was enacted pursuant to section 163.32466, which he contends is unconstitutional. However, we do not reach this constitutional argument because we conclude that the ordinance is invalid because the City did not comply with the notice provisions of section 166.041.[1]  Section 166.041(3)(c) in pertinent part provides:

> (c) Ordinances initiated by other than the municipality that change the actual zoning map designation of a parcel or parcels of land shall be enacted pursuant to paragraph (a). Ordinances that change the actual list of permitted, conditional, or prohibited uses within a zoning category, or ordinances initiated by the municipality that change the actual zoning map designation of a parcel or parcels of land shall be enacted pursuant to the following procedure:
>
> 1. In cases in which the proposed ordinance changes the actual zoning map designation for a parcel or parcels of land involving less than 10 contiguous acres, the governing body shall direct the clerk of the governing body to notify by mail each real property owner whose land the municipality will redesignate by enactment of the ordinance and whose address is known by reference to the latest ad valorem tax records. The notice shall state the substance of the proposed ordinance as it affects that property owner and shall set a time and place for one or more public hearings on such ordinance. Such notice shall be given at least 30 days prior to the date set for the public hearing, and a copy of the notice shall be kept available for public inspection during the regular business hours of the office of the clerk of the governing body. The governing body shall hold a public hearing on the proposed ordinance and may, upon the conclusion of the hearing, immediately adopt the ordinance.
>
> 2. In cases in which the proposed ordinance changes the actual list of permitted, conditional, or prohibited uses within a zoning category, or changes the actual zoning map designation of a parcel or parcels of land involving 10

---

[1]We decline to do so based on the principle of judicial restraint that courts should avoid considering a constitutional question when a case may be disposed of on nonconstitutional grounds. See, e.g., In re Holder, 945 So. 2d 1130, 1133 (Fla. 2006).

contiguous acres or more, the governing body shall provide for public notice and hearings as follows:

a. The local governing body shall hold two advertised public hearings on the proposed ordinance. At least one hearing shall be held after 5 p.m. on a weekday, unless the local governing body, by a majority plus one vote, elects to conduct that hearing at another time of day. The first public hearing shall be held at least 7 days after the day that the first advertisement is published. The second hearing shall be held at least 10 days after the first hearing and shall be advertised at least 5 days prior to the public hearing.

b. The required advertisements shall be no less than 2 columns wide by 10 inches long in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be placed in a newspaper of general paid circulation in the municipality and of general interest and readership in the municipality, not one of limited subject matter, pursuant to chapter 50. It is the legislative intent that, whenever possible, the advertisement appear in a newspaper that is published at least 5 days a week unless the only newspaper in the municipality is published less than 5 days a week.

This court and others have held that zoning ordinances not strictly enacted pursuant to the notice provisions of section 166.041 are null and void. See, e.g., David v. City of Dunedin, 473 So. 2d 304, 306 (Fla. 2d DCA 1985) ("[T]he ordinance and its amendment are zoning ordinances which are null and void if not strictly enacted pursuant to the requirements of section 166.041."); Coleman v. City of Key West, 807 So. 2d 84, 85 (Fla. 3d DCA 2001) (same). The City does not dispute that it did not follow the procedure outlined in section 166.041(3), nor does it offer any argument in defense of its failure to do so. The City's brief is silent on that point, and when questioned about this issue at oral argument the City responded only that the ordinance

- 4 -

was "clearly a legislative enactment," a point which is not in dispute and which is not pertinent to the question of whether the ordinance had to be enacted pursuant to the provisions of section 166.041(c)(3). Accordingly, we conclude that Ordinance 2011-19 is null and void because the City did not comply with the notice provisions of section 166.041(c)(3).

Anderson also challenges the entry of summary judgment in favor of the City on his claim that the appellees violated article I, section 24 of the Florida Constitution and section 286.011, the Government in the Sunshine Law. Specifically, Anderson alleged that the appellees conducted a series of seven shade meetings[2] at which the members of the City Commission devised a plan to amend the City's comprehensive plan that included the repeal or modification of certain provisions of the City's charter and the passage of legislation by the legislature. Anderson alleged that over a period of eight months the Commissioners met in secret and formulated a strategy to readopt a comprehensive plan amendment that had been judicially invalidated and then to insulate the readopted plan from future administrative or judicial challenges.[3]

Section 286.011(8) creates an exemption to the Sunshine Law for meetings between a public body and its attorney:

> (8) Notwithstanding the provisions of subsection (1), any board or commission of any state agency or authority or any

---

[2]A "shade meeting" is a meeting held pursuant to section 286.011(8), which creates an exemption to the Sunshine Law to permit counsel for public bodies to obtain nonpublic advice from public bodies concerning "settlement negotiations" and "strategy sessions related to litigation expenditures" regarding pending litigation.

[3]Anderson alleged numerous other violations not detailed here as they are not pertinent to the argument he has pursued in this appeal.

agency or authority of any county, municipal corporation, or political subdivision, and the chief administrative or executive officer of the governmental entity, may meet in private with the entity's attorney to discuss pending litigation to which the entity is presently a party before a court or administrative agency, provided that the following conditions are met:

(a) The entity's attorney shall advise the entity at a public meeting that he or she desires advice concerning the litigation.

(b) The subject matter of the meeting shall be confined to settlement negotiations or strategy sessions related to litigation expenditures.

(c) The entire session shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the session, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the session shall be off the record. The court reporter's notes shall be fully transcribed and filed with the entity's clerk within a reasonable time after the meeting.

(d) The entity shall give reasonable public notice of the time and date of the attorney-client session and the names of persons who will be attending the session. The session shall commence at an open meeting at which the persons chairing the meeting shall announce the commencement and estimated length of the attorney-client session and the names of the persons attending. At the conclusion of the attorney-client session, the meeting shall be reopened, and the person chairing the meeting shall announce the termination of the session.

(e) The transcript shall be made part of the public record upon conclusion of the litigation.

This exemption was adopted in 1993 for the purpose of leveling the playing field in litigation between public bodies and their private adversaries. The exemption addressed a long-standing complaint by public bodies that discussing settlement negotiations in public meetings would divulge to the adversary the position or "bottom

- 6 -

line" of the public body and thus give the adversary an unfair advantage that could be used to secure unmerited or excessive judgments or settlements against the public. See Neu v. Miami Herald Publ'g Co., 462 So. 2d 821, 824 (Fla. 1985). The legislative history states the Shade Exemption merely provides a governmental entity's attorney an opportunity to receive necessary direction and information from the government entity. Sch. Bd. of Duval Cnty. v. Fla. Publ'g Co., 670 So. 2d 99, 100 (Fla. 1st DCA 1996) (quoting Staff of Fla. H.R. Comm. on Gov't Operations, CS/HB 491 (1993) Final Bill Analysis & Economic Impact Statement at 3 (hereinafter HB 491 Staff Analysis)). The court in Zorc v. City of Vero Beach, 722 So. 2d 891, 898 (Fla. 4th DCA 1998), explained that the exemption is limited to discussion of settling pending litigation by negotiation and agreement among the parties. It cited legislative history providing that "[t]his act is not an attempt to provide a means for government to meet behind closed doors to accomplish goals out of the sunshine." Id. at 901 (quoting HB 491 Staff Analysis).

As is plain from the language of the statute, the exemption is limited to discussions involving the actual settlement of presently pending litigation. In violation of that limitation, the discussions in the seven closed meetings at issue covered a wide range of political and policy issues not connected to settlement of the pending litigation or related to the expenses of litigating the pending cases, which at that point were on appeal. The City's attorneys and the Commissioners repeatedly refer to the shade meetings discussions as pertaining to the "comp plan strategy." While some of the discussion at these meetings did in fact involve the costs associated with the pending litigation, by and large the meetings pertained to finding a way to readopt the comprehensive plan amendment that had been invalidated by the court and to avoid

- 7 -

future litigation regarding the readopted amendment. The discussions also reveal that the City sought to keep its strategy secret in order to ensure the success of its planned strategy to readopt the comprehensive plan amendment while at the same time insulating it from future challenges. Because the City's discussions exceeded the scope of the exemption for shade meetings, it was error for the trial court to enter judgment in its favor and deny Anderson's motion for summary judgment.

We are also unpersuaded by the City's argument pointing to the trial court's alternative finding that even if the discussions exceeded the scope of the exemption that any violation was "cured." The doctrine of "cure" in this context refers to the fact that an action that would otherwise be void because of a violation of the Sunshine Law may be reinstated or "cured" if voted on again after full public discussion and participation. See Tolar v. Sch. Bd. of Liberty Cnty., 398 So. 2d 427, 428-29 (Fla. 1981). That doctrine is inapplicable here because it does not apply when the later action amounts to a "perfunctory ratification" or "ceremonial acceptance" of the void act. See id. at 429. Here, to the extent the board discussed and took actions on the "comp plan strategy" in public, its actions amounted to nothing more than a "perfunctory ratification" of what had clearly been decided in the shade meetings.

Having concluded that the City did violate the Sunshine Law, we must address the remedy for that violation. The primary remedy Anderson has sought in bringing his Sunshine Law claim—having the adoption of the comprehensive plan amendment voided—has already been accomplished by virtue of our determination that the plan amendment was improperly adopted without complying with the notice provision of section 166.041(c)(3). Nevertheless, Anderson has argued, and the City

conceded at oral argument, that Anderson is at least entitled to a declaration that the City violated the Sunshine Law, provided we conclude that it did. We also note that as argued by amicus First Amendment Foundation, Inc., even when an illicit action is "cured" it does not absolve a public body of its responsibility for violating the Sunshine Law in the first instance; it simply provides a way to salvage a void act by reconsidering it in Sunshine. See, e.g., Tolar, 398 So. 2d at 429. Amicus also points out that responsibility for a violation can include criminal and noncriminal penalties under section 286.011(4). Thus, while there may be no need to declare the comprehensive plan void, we conclude that Anderson is still entitled to a declaration that the City violated the Sunshine Law. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

DAVIS, C.J., and KHOUZAM, J., Concur.