# Supreme Court of Florida

_____

No. SC21-175
_____

**BRINDA COATES, etc.,**
Petitioner,

vs.

**R.J. REYNOLDS TOBACCO COMPANY,**
Respondent.

January 5, 2023

POLSTON, J.

In *R.J. Reynolds Tobacco Co. v. Coates*, 308 So. 3d 1068 (Fla. 5th DCA 2020), the Fifth District Court of Appeal reversed as excessive a punitive damages award that exceeds the net compensatory damages award by a ratio of 106.7 to 1. In so ruling, the district court certified a question of great public importance.[1] 308 So. 3d at 1076.

In passing upon the certified question, the Fifth District addressed the Florida and federal standards for evaluating whether

---

1. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

a punitive damages award is excessive, and ultimately certified this

question:

> When other factors support the amount of punitive damages awarded, but the award is excessive compared to the compensatory award, does the amount of punitive damages that may legally be imposed for causing the death of a human being depend on the actual amount of compensatory damages awarded to the decedent's estate, even when that compensatory award is modest and the punitive award would be sustainable compared to awards in other cases for comparable injuries caused by comparable misconduct?

*Coates*, 308 So. 3d at 1076.

Under Florida law, although the trial court has broad discretion in ruling on a motion for remittitur of a damages award, that discretion is constrained by statutory criteria that must be considered in determining whether the award is excessive. *See Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 308 (Fla. 2017). Because the Florida Statutes require us to conclude that a punitive damages award in a wrongful death action must bear a reasonable relation to the amount of damages proved and the injury suffered by the statutory beneficiaries, we decline to further analyze the issue as a matter of Florida or federal constitutional law. *See In re Holder*, 945 So. 2d 1130, 1133 (Fla. 2006) ("[W]e have long

subscribed to a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds.").  Accordingly, we rephrase the certified question as follows:

> Does the trial court in a wrongful death action abuse its discretion by denying remittitur of a punitive damages award that does not bear a reasonable relation to the amount of damages proved and the injury suffered by the statutory beneficiaries?

As explained below, our answer to the rephrased question is yes, and because no reasonable trial court could have concluded that the necessary relation exists in this case, we hold that the trial court abused its discretion by denying remittitur of the excessive award.  Accordingly, we approve the Fifth District's decision reversing the punitive damages award and remanding for further proceedings to the extent the district court's decision is consistent with this opinion.

## I.  BACKGROUND

This case involves a non-*Engle*[2] wrongful death action that is governed by the 1997 version of the Florida Statutes based on the

_____

2.  *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

- 3 -

date of the decedent's death. *Coates*, 308 So. 3d at 1070 n.1, 1071. In the operative complaint filed in the trial court, the plaintiff Brinda Coates, individually and as the personal representative of the estate of her sister, Lois Stucky, alleged that Ms. Stucky died as a result of lung cancer caused by smoking cigarettes and sought relief from the defendant R.J. Reynolds Tobacco Company (RJR) based on four theories: (1) negligence, (2) strict-liability design defect, (3) fraud, and (4) conspiracy.

The jury found for Ms. Coates on the strict liability theory but rejected RJR's liability under the other three theories. The jury further found that each of Ms. Stucky's three adult children sustained $100,000 in damages, for a total of $300,000. *Id.* at 1070. The jury's verdict specified that these were "the total amount" of damages sustained by Ms. Stucky's children "for the loss of parental companionship, instruction[,] and guidance, and from their mental pain and suffering as a result of Lois Stucky's lung cancer and death." However, the jury also found that Ms. Stucky's negligence caused 50% of the damages, which reduced the total compensatory damages to $150,000. *Coates*, 308 So. 3d at

- 4 -

1070.  Finally, the jury found that punitive damages were warranted and ultimately awarded $16 million.  *Id.*

RJR filed a motion for new trial or remittitur, arguing that the punitive damages award was excessive.  *Id.*  In an unelaborated order, the trial court denied RJR's motion, *id.* at 1071 n.3, and then entered a final judgment against RJR.

RJR appealed to the Fifth District, "challeng[ing] the punitive damages award as excessive, particularly when considered in relation to the $150,000 net compensatory damages award, and argu[ing] that the trial court erred in denying its motion for new trial or remittitur."  *Id.* at 1071.  After concluding that the punitive damages award is excessive under both Florida and federal law, the Fifth District reversed the award and remanded "for entry of an order of remittitur or, if remittitur is rejected by either party, a new trial solely on the amount of punitive damages."  *Id.* at 1076.  In so holding, the Fifth District certified to this Court the question of great public importance that we have rephrased and limited to Florida law as set forth above.

## II. ANALYSIS

The rephrased question presents a pure question of law that we review de novo. *See Townsend v. R.J. Reynolds Tobacco Co.*, 192 So. 3d 1223, 1225 (Fla. 2016). To explain why we answer it in the affirmative, we first address Florida law requiring a reasonable relationship between punitive damages and the amount of damages proved and the injury suffered. Then, we explain why the rule is no different in a wrongful death action. Finally, we apply Florida law to the undisputed facts of this case to conclude that the trial court abused its discretion by denying remittitur of the excessive punitive damages award.

### A. Florida law requires a reasonable relationship between punitive damages and the amount of damages proved and the injury suffered.

The rephased question implicates two statutes, sections 768.73 and 768.74, Florida Statutes (1997), that govern review of the punitive damages award at issue.[3] Therefore, we begin with

---

3. Since 1997, the first statute, section 768.73, has been substantially amended. *See* § 768.73, Fla. Stat. (2021). The second statute, section 768.74, remains the same. *See* § 768.74, Fla. Stat. (2021).

their text. *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 946 (Fla. 2020) (explaining that in interpreting a statute this Court "follow[s] the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means' ") (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

First, section 768.73, Florida Statutes (1997), addresses Florida's limitation on punitive damages, and subject to one exception, caps a punitive damages award in relation to the compensatory damages award at a 3:1 ratio:

> (1) (a) In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, and involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b). However, this subsection does not apply to any class action.
>
> (b) If any award for punitive damages exceeds the limitation specified in paragraph (a), the award is presumed to be excessive and the defendant is entitled to remittitur of the amount in excess of the limitation unless the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive

in light of the facts and circumstances which were presented to the trier of fact.

(c) This subsection is not intended to prohibit an appropriate court from exercising its jurisdiction under s. 768.74 in determining the reasonableness of an award of punitive damages that is less than three times the amount of compensatory damages.

§ 768.73(1)(a)-(c).

Second, section 768.74, Florida Statutes (1997), which is Florida's remittitur and additur statute, requires the trial court, upon a proper motion, to review an award of money damages "to determine if [the] amount is excessive . . . in light of the facts and circumstances which were presented to the trier of fact," § 768.74(1), and to "order a remittitur" if it "finds that the amount awarded is excessive," § 768.74(2). The statute establishes five "criteria" that the trial court "shall consider" "[i]n determining whether an award is excessive . . . in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any that such award exceeds a reasonable range." § 768.74(5). The rephrased certified question implicates the fourth of these five criteria, which requires the trial court to consider

- 8 -

"[w]hether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered."  § 768.74(5)(d).

Reading these statutes together, unless the "facts and circumstances" exception of section 768.73(1)(b) applies, section 768.73(1)(a) caps an award of punitive damages in comparison to the compensatory damages award at a ratio of 3:1, and section 768.74 provides for further review of an award that is challenged as excessive, regardless of whether the award falls inside or outside of the 3:1 cap.  Therefore, even when (as the Fifth District held here) the "facts and circumstances" allow a punitive damages award to exceed the 3:1 presumptive cap of section 768.73(1)(a), that is not the end of the analysis.  *See Coates*, 308 So. 3d at 1073.  Rather, the trial court must review the challenged award for excessiveness under section 768.74.  *See id.*; *see also* § 768.74(3), Fla. Stat. ("It is the intention of the Legislature that awards of damages be subject to close scrutiny by the courts and that *all* such awards be adequate and not excessive.") (emphasis added); *Guarino v. Armstrong World Indus., Inc.*, No. 88-1087-CIV-MARCUS, 1989 WL 265218, at *2 (S.D. Fla. Oct. 13, 1989) (describing section 768.73(1)(a) as imposing a cap on punitive damages and section

768.74(2) as providing "a further check upon the imposition of excessive punitive damages").

When a trial court reviews an award of punitive damages under section 768.74, the statute plainly requires that the amount awarded must "bear[] a reasonable relation to the amount of damages proved and the injury suffered." § 768.74(5)(d). This requirement is one of the five "criteria" that the trial court "shall consider" in determining whether a damages award is excessive, § 768.74(5)(d), and is therefore a condition that must be met for the award to stand. *See Owens v. State*, 303 So. 3d 993, 997 n.5 (Fla. 1st DCA 2020) ("The word criteria used by the Legislature is the plural of criterion. Using the plural shows that the Legislature intended all [the] conditions to be met . . . .") (citation omitted); *see also Wal-Mart Stores Inc. v. Thornton*, 241 So. 3d 867, 868 (Fla. 4th DCA 2018) (remanding for remittitur where the amount of damages awarded bore no reasonable relationship to the damages proved).

Consistent with the statutory text, our precedent recognizes that a punitive damage award must bear a reasonable relationship to the amount of damages proved and the injury suffered. Specifically, in *Schoeff*, 232 So. 3d at 308, we applied section

768.74(5) to "evaluate a denial of remittitur for abuse of discretion," and identified the compensatory damages award as relevant to the statutory inquiry, explaining that "[p]unitive damages must also be reviewed alongside compensatory damages 'to ensure a reasonable relationship between the two.'" *Id.* (quoting *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1264 (Fla. 2006)).

### B. The rule is no different in a wrongful death action.

Given the clarity of both the statutory text and our precedent, it is not surprising that Ms. Coates acknowledges that sections 768.73 and 768.74 make relevant a comparison between punitive and compensatory damages. She also acknowledges that the dollar amount of the $16 million punitive damages award in this case compared to the dollar amount of the $150,000 net compensatory damages award "might call the punitive award into some initial question." However, despite the 106.7 to 1 ratio of the awards, she argues that the necessary reasonable relationship exists because, unlike other actions where the compensatory damages reflect the actual injury suffered, the compensatory damages in a wrongful death action do not because the statutory beneficiaries do not recover damages for the decedent's death. Insisting that the

- 11 -

uncompensated-for death is really the injury suffered in a wrongful death action, Ms. Coates urges us to answer the rephrased question in the negative and uphold the $16 million punitive damages award as bearing a reasonable relation to Ms. Stucky's death.

We cannot. The text of Florida's Wrongful Death Act controls and precludes us from concluding that death is "the injury suffered" in a wrongful death action. *See Fla. E. Coast Ry. Co. v. McRoberts*, 149 So. 631, 632 (Fla. 1933) ("The common law afforded no remedy for death by wrongful act. Hence the right and remedy are purely statutory."). The Wrongful Death Act creates a statutory right of action, *see* § 768.19, Fla. Stat. (1997), and provides that the injury suffered in such an action is to the decedent's statutory beneficiaries, not the decedent, *see* §§ 768.18, 768.21, Fla. Stat. (1997).

As explained above, the statutory beneficiaries in this case are Ms. Stucky's three adult children. § 768.18(1) (defining "[s]urvivors" to include the decedent's children). The Wrongful Death Act specifies the damages that "may be awarded" to the statutory beneficiaries, and where the decedent's survivors are concerned provides that "[e]ach survivor may recover the value of

lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value." § 768.21(1). Accordingly, because the Wrongful Death Act remedies injuries suffered "for the living and not for the dead," *Martin v. United Sec. Servs., Inc.*, 314 So. 2d 765, 769 (Fla. 1975), we cannot conclude, for purposes of evaluating a punitive damages award in a wrongful death action under section 768.74(5)(d), that the decedent's death is "the injury suffered." *See* § 768.20, Fla. Stat. (1997) ("When a personal injury to the decedent results in death, *no action for the personal injury shall survive*, and any such action pending at the time of death shall abate.") (emphasis added).

Citing decisions from other states, Ms. Coates cautions that failing to recognize death as the real injury suffered in a wrongful death action disregards the sanctity of life by allowing a tortfeasor to be punished to a lesser extent in a case where the injured person dies as a result of the tortious conduct than in a case where the injured person survives. *See Schwartz v. Philip Morris USA, Inc.*, 355 P.3d 931, 942-43 (Or. Ct. App. 2015) (affirming a punitive to compensatory damage award ratio of 148:1 in a wrongful death

action based in part on the court's conclusions that the $170,000 compensatory award did not, as a matter of Oregon law, "account for the loss [of the decedent's] life itself" and "would not serve an appropriate admonitory function in the circumstances of this case").

In Florida, however, the Legislature made a policy choice to exclude death as a cognizable injury in a wrongful death action and to recognize instead the injury suffered by the statutory beneficiaries. It is not for us to treat injury differently for punitive damages in wrongful death actions where the Legislature has not. Rather, our job is to faithfully apply the law as written. *See State v. Rife*, 789 So. 2d 288, 292 (Fla. 2001) ("[I]t is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute.").

Although the dissent properly observes that the statutes provide for the estate as a beneficiary, our analysis on punitive damages is not affected because death is not a cognizable injury for the estate in a wrongful death action. Section 768.21(6) specifies the damages that "[t]he decedent's personal representative may recover for the decedent's estate." Although not part of the damages awarded in this case, the statute authorizes, subject to

- 14 -

certain limitations, recovery for injuries to the estate in the form of lost earnings of the deceased from the date of injury to the date of death, lost prospective net accumulations of the estate, and medical or funeral expenses. *See id.* Nowhere does the statute authorize recovery on behalf of the estate for the decedent's death. Significantly, that is because the Legislature's choice to exclude death as a cognizable injury in a wrongful death action equally applies to all of the statutory beneficiaries, including the estate. *See* § 768.20 (limiting the personal representative's recovery "for the benefit of the decedent's survivors and estate" to the damages "specified in this act" and expressly extinguishing any action for a personal injury to the decedent that results in death).

Under Florida law, which excludes the decedent's death as a cognizable injury under the Wrongful Death Act, we hold that the trial court in a wrongful death action abuses its discretion by denying remittitur of a punitive damages award that does not bear a reasonable relation to the damages proved and the injury suffered

by the statutory beneficiaries. Therefore, we answer the rephrased question in the affirmative.[4]

## C. The trial court abused its discretion by denying remittitur.

In this case, we agree with the Fifth District that the trial court abused its discretion in denying remittitur of the $16 million punitive damages award. *See Engle*, 945 So. 2d at 1263 ("Under Florida law, a trial court's determination of whether a damage award is excessive, requiring a remittitur or a new trial, is reviewed by an appellate court under an abuse of discretion standard."); *see also Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.").

---

4. In so holding, we reiterate that the rephrased question is limited to the facts of this case where the compensatory damages award reflects the damages proved and the legally cognizable injury suffered by the statutory beneficiaries. Therefore, we need not reach RJR's argument that section 768.74(5)(d), on its face and as interpreted by this Court in *Schoeff*, should be read to require remittitur of a punitive damages award based solely on the ratio of punitive to compensatory damages, without regard to the injury suffered. Nor do we express any opinion as to whether the damages proved will *always* be coextensive with the injury suffered in every case to which the remittitur statute applies.

Although we cannot say it was unreasonable to conclude that the facts and circumstances support departing from the 3:1 cap of section 768.73(1), *see Coates*, 308 So. 3d at 1073, as we have explained above, that is not the end of the inquiry. Rather, section 768.74(5)(d) imposes a further check against an excessive punitive damages award that turns on "[w]hether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered." Looking to the undisputed facts in this record, no reasonable trial court could have concluded that the $16 million punitive damages award survives that check. *See Canakaris*, 382 So. 2d at 1203.

Here, the damages proved were $300,000, reduced by Ms. Stucky's 50% comparative fault to a net of $150,000. Although the Fifth District described these damages as "modest," *Coates*, 308 So. 3d at 1076, they are not merely nominal damages awarded in a case where compensatory damages were not proven. *See Land & Sea Petroleum Holdings, Inc. v. Leavitt*, 321 So. 3d 810, 816 (Fla. 4th DCA 2021) ("[N]ominal damages are in effect zero damages and are defined as those damages flowing from the establishment of an invasion of a legal right where actual or compensatory damages

- 17 -

have not been proven.") (quoting *Ault v. Lohr*, 538 So. 2d 454, 456 (Fla. 1989)). Rather, the injury suffered by the survivors in this wrongful death case is the injury reflected in the compensatory damages award that the jury found to represent "the total amount" of the damages that Ms. Stucky's survivors sustained "for the loss of parental companionship, instruction[,] and guidance, and from their mental pain and suffering as a result of Lois Stucky's lung cancer and death."

Finally, Ms. Coates correctly notes that higher dollar awards of punitive damages have been approved in other tobacco cases. *See Coates*, 308 So. 3d at 1076 (collecting tobacco cases with punitive damages awards of $20 million or more). However, the statutory analysis of whether a punitive damages award bears a reasonable relation to the amount of damages proven and the injury suffered is necessarily case-specific. *See* § 768.74(5)(d). The damages findings in this case sit in stark contrast to other wrongful death cases where the proof of more significant injury to the statutory beneficiaries resulted in much larger compensatory damages awards that, in turn, supported higher punitive damages awards. *See, e.g., Schoeff*, 232 So. 3d at 299, 308-09 (holding the trial court

did not abuse its discretion by denying remittitur of a $30 million punitive damages award where the jury found the tobacco company liable for the decedent's wrongful death on multiple claims, including fraudulent concealment, and awarded $10.5 million in compensatory damages).

In this case, because no reasonable trial court could have found that the $16 million punitive damages award bears a reasonable relation to the $150,000 net compensatory damages award and the injury suffered by Ms. Stucky's survivors, the Fifth District correctly reversed the excessive punitive damages award and remanded for further proceedings.

### III. CONCLUSION

For the reasons above, we hold that a trial court in a wrongful death action abuses its discretion by denying remittitur of a punitive damages award that does not bear a reasonable relation to the damages proved and the injuries suffered by the statutory beneficiaries. Accordingly, we answer the rephrased certified question in the affirmative. Further, because the trial court abused its discretion by not ordering remittitur of the punitive damages award in this case, we approve the Fifth District's decision reversing

the excessive award and remanding for further proceedings to the extent the district court's decision is consistent with this opinion.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

As a result of today's decision, a Florida jury's verdict—that R.J. Reynolds Tobacco Company (R.J. Reynolds) is liable for $16 million in punitive damages for the wrongful death of Lois Stucky—will be drastically reduced to a fraction of what the jury determined that the circumstances of the case warrant. This drastic reduction is attributable to the majority's analysis of the rephrased certified question, an analysis that unreasonably concludes that the decedent's death is not a cognizable injury for purposes of punitive damages claims.

Although Florida's Wrongful Death Act does not recognize the death of the decedent, Ms. Stucky, as a cognizable injury in awarding compensatory damages, I disagree with the majority's

- 20 -

conclusion that under the Act, her death is not a cognizable injury for the purpose of awarding punitive damages. I respectfully dissent.

In March 2019, the jury rendered a verdict which read in part: "Please state whether cigarettes manufactured by R.J. Reynolds Tobacco Company and smoked by Lois Stucky were defective by reasons of their design and, if so, whether the defect was the legal cause of Lois Stucky's lung cancer and death." To this question, the jury answered: "Yes." The jury further found "by clear and convincing evidence that punitive damages are warranted against R.J. Reynolds Tobacco Company under the circumstances of this case."

When evaluating a plaintiff's claim for punitive damages, the jury "focuses on ensuring the correct remedy for the underlying violation—one that punishes the defendant and deters others from engaging in similar conduct." *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1230 (Fla. 2016). Naturally, this means that in a wrongful death case, the jury must consider the correct remedy for the tortious conduct that *caused the decedent's death*.

However, today's decision guts the impact of punitive damages in wrongful death cases because the majority concludes that the most important part, indeed, the basis of a wrongful death claim—the decedent's death—may not be considered an injury suffered. This decision invades the province of the jury in wrongful death cases because it increases the likelihood that remittitur will be ordered whenever the ratio of punitive damages to compensatory damages exceeds the ratio of 3:1.

To arrive at its conclusion that the jury's punitive damages award was excessive in this case, the majority relies on a strained interpretation of one of five factors set forth in section 768.74(5), Florida Statutes (1997), and it concludes that no reasonable court could have found that the punitive damages award bears a reasonable relation to the amount of damages proved and the injury suffered. *See* majority op. at 18. The majority also narrowly focuses on Ms. Stuckey's three adult children as the "statutory beneficiaries," although the decedent's estate is also an enumerated beneficiary under Florida's Wrongful Death Act. The majority's interpretation raises the question: when evaluating punitive

damages in a wrongful death case, how can a decedent's death *not* be a cognizable injury?

The Wrongful Death Act, with its focus on compensatory damages, should not be read to limit the type of injury cognizable in determining punitive damages. Nor does considering death as an injury for punitive damages purposes constitute maintaining an "action for the personal injury," which is prohibited under the Act. *See* § 768.20, Fla. Stat. (1997).

Because R.J. Reynolds's tortious conduct caused Ms. Stucky's death, treating her death as a cognizable injury for the purpose of awarding punitive damages is necessary to hold R.J. Reynolds fully accountable for the harm it caused. This rationale was cogently explained in *Schwarz v. Philip Morris USA, Inc.,* 355 P.3d 931, 943 (Or. Ct. App. 2015), where similar to Florida, compensatory "damages [in Oregon] did *not* account for the loss of [the decedent's] life itself, as 'Oregon law does not provide for compensatory damages for loss of life to the person who has died or to her estate in this type of case.'" *Id.* (quoting jury instruction). As a result, the court explained, "the compensatory damages did not account for all of the harm directly suffered as a result of the actions of defendant.

- 23 -

Rather, defendant's conduct caused harm for which defendant was not required to pay." *Id.*

Acknowledging the inadequacy of this result, the court concluded that the "less than $170,000" awarded to the plaintiffs was "a relatively small amount for the death of a human being and would not serve an appropriate admonitory function in the circumstances of this case." *Id.* The court observed that the "defendant engaged in particularly egregious acts in this case, but that conduct resulted in a relatively small amount of compensatory damages in light of the harm that resulted." *Id.*

In the present case, the Fifth District Court of Appeal also identified egregious wrongdoing by the defendant, R.J. Reynolds, explaining in detail:

> The evidence at trial demonstrated significant reprehensibility by Reynolds in designing its cigarettes. It used a tobacco curing process designed to make the smoke "smoother" and manipulated the levels of nicotine and other additives to make its product easily inhalable, and thus, addictive. Too, its advertising efforts, particularly those advertisements produced in the early years of Ms. Stucky's addiction, were intended to entice young people to begin smoking and to suggest, if not convince, consumers that smoking was safe, or reasonably so. But it was well established that the inhalation of cigarette smoke is not safe. Stucky paid the

price for her addiction. The jury determined that Reynolds must also pay its price.

*R.J. Reynolds Tobacco Co. v. Coates*, 308 So. 3d 1068, 1070 (Fla. 5th DCA 2020). As a result of the jury's findings, the jury awarded $16 million in punitive damages for the entirety of the harm caused by R.J. Reynolds. *Id.* at 1071.

The exclusion of Ms. Stucky's death as a cognizable injury for punitive damages purposes is revealed to be especially unfair when considering that if she had not died as a result of R.J. Reynolds's wrongdoing, but instead was left alive but severely injured, that injury would be able to be considered in determining punitive damages. Under today's holding, however, because Ms. Stucky did not survive, her death is not a basis for awarding punitive damages.

While the majority emphasizes that a cognizable wrongful death injury must attach to the statutory beneficiaries, I hasten to note that a decedent's estate is also a named beneficiary under the Wrongful Death Act; indeed, Ms. Coates was successful on her strict liability claim in her capacity as the personal representative of Ms. Stucky's estate. Although a personal injury cause of action cannot survive the death of the decedent, Ms. Stucky's death itself

- 25 -

is a separate injury, and naturally, only cognizable upon her death. Accordingly, death is the injury suffered to the decedent's estate as a statutory beneficiary, and it can be considered for punitive damages purposes.

It is not hard to imagine a situation under the majority's interpretation where the punitive damages awarded to a living victim will far exceed the punitive damages awarded if a victim dies. Recognizing death as a cognizable injury for punitive damage purposes would maintain the Wrongful Death Act's function of defining available compensatory damages without robbing punitive damage awards of their purpose. Because of the untenable results that will flow from the majority's interpretation, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal
 Direct Conflict of Decisions/Certified Great Public Importance

  Fifth District – Case No. 5D19-2549

  (Orange County)

John S. Mills of Bishop & Mills, PLLC, Jacksonville, Florida, Courtney Brewer, Jonathan Martin, and Bailey Howard of Bishop & Mills, PLLC, Tallahassee, Florida,

  for Petitioner

Troy A. Fuhrman and Marie A. Borland of Hill Ward Henderson, Tampa, Florida; Jason T. Burnette and Brian Charles Lea of Jones Day, Atlanta, Georgia, Charles R.A. Morse of Jones Day, New York, New York, and Andrew J. Bentz of Jones Day, Washington, District of Columbia,

    for Respondent

Geoffrey J. Michael, John P. Elwood, and Samuel F. Callahan of Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia,

    for Amicus Curiae Philip Morris USA Inc.

Kansas R. Gooden of Boyd & Jenerette, PA, Miami, Florida; and Cyrus S. Vaziri of Cyrus S. Vaziri, P.A., Fort Myers, Florida,

    for Amicus Curiae Florida Defense Lawyers Association

William W. Large of Florida Justice Reform Institute, Tallahassee, Florida; and Joseph H. Lang, Jr. of Carlton Fields, P.A., Tampa, Florida,

    for Amici Curiae the Chamber of Commerce of the United States of America, the American Tort Reform Association, and the Florida Justice Reform Institute

Wendy F. Lumish of Bowman and Brooke LLP, Coral Gables, Florida; and Thomas H. Dupree, Jr. of Gibson, Dunn & Crutcher LLP, Washington, District of Columbia,

    for Amicus Curiae Product Liability Advisory Council, Inc.

Cory L. Andrews of Washington Legal Foundation, Washington, District of Columbia,

    for Amicus Curiae Washington Legal Foundation